1  Mary Helen Beatificato, Esq. (State Bar No. 220936)
   Insight Psychology and Addiction, Inc.
2  4000 Birch Street, Suite 112
   Newport Beach, CA 92660
3  Telephone:   (949) 216-3851
   Facsimile:    (949) 467-9945
4
   Alisha Patterson (State Bar No. 274630)
5  apatterson@rutan.com
   RUTAN & TUCKER, LLP
6  18575 Jamboree Road, 9th Floor
   Irvine, CA  92612
7  Telephone:   714-641-5100
   Facsimile:    714-546-9035
8
   Attorneys for Plaintiff and Counter-Defendant
9  INSIGHT PSYCHOLOGY AND ADDICTION,
   INC. and Counter-Defendants MARY HELEN
10 BEATIFICATO and GERALD GROSSO

11 [Additional Attorneys Listed on Next Page]

12               UNITED STATES DISTRICT COURT

13         CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

14 INSIGHT PSYCHOLOGY AND              Case No. 8:20−cv−00504−MEMF−JDE
   ADDICTION, INC., a California
15 corporation, and JANE DOE, an       Judge:   Honorable Maame Ewusi-Mensah
   individual,                                  Frimpong
16                                     Ctrm:    8B
                Plaintiffs,
17                                     **PLAINTIFFS' JOINT MOTION FOR
        vs.                            INJUNCTIVE RELIEF**
18
   CITY OF COSTA MESA, a municipal     [Filed concurrently with Plaintiffs' Joint
19 corporation; and DOES 1-10, inclusive,   Motion For Bifurcation; Declarations of
                                       Mary Helen Beatificato, Jane Doe and
20              Defendants.            Alisha Patterson in Support of Joint
                                       Motions; Request for Judicial Notice in
21 ─────────────────────────────       Support of Joint Motions; and Proposed
   CITY OF COSTA MESA, a municipal     Orders Granting Joint Motions]
22 corporation,
                                       Hearing:
23              Counter-Plaintiff,     Date: November 14, 2024
                                       Time: 10:00 a.m.
24      vs.                            Courtroom: 8B

25 INSIGHT PSYCHOLOGY AND              Date Action Filed:  March 12, 2020
   ADDICTION, INC., a California       Trial Date:          February 24, 2025
26 corporation; MARY HELEN
   BEATIFICATO, an individual;
27 GERALD GROSSO, an individual; and
   ROES 1-50,
28
                Counter-Defendants.

1

## **ADDITIONAL ATTORNEYS**

2   Autumn M. Elliott (State Bar No. 230043)
    Zeenat Hassan (State Bar No. 294138)
3   DISABILITY RIGHTS CALIFORNIA
    350 S. Bixel Street, Suite 290
4   Los Angeles, CA 90017
    Tel.: (213) 213-8000
5   Fax: (213) 213-8001
    Autumn.Elliott@disabilityrightsca.org
6   Zeenat.Hassan@disabilityrightsca.org

7   Christopher Brancart (State Bar No. 128475)
    BRANCART & BRANCART
8   P. O. Box 686
    Pescadero, CA 94060
9   Tel.: (650) 879-0141
    Fax: (650) 879-1103
10  cbrancart@brancart.com

11  Attorneys for PLAINTIFF JANE DOE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

**PLEASE TAKE NOTICE** that on **November 14, 2024**, at **10:00 a.m.**, or as soon thereafter as counsel may be heard in **Courtroom 8B** of the above-captioned Court, located at the United States Courthouse, 350 West First Street, Los Angeles, California, 90012, Courtroom 8B, 8th Floor, Plaintiff and Counter-Defendant Insight Psychology and Addiction, Inc. ("Insight") and Plaintiff Jane Doe ("Ms. Doe") (collectively, "Plaintiffs") will jointly move the Court pursuant to Rule 65(d) of the Federal Rules of Civil Procedure and the state and federal fair housing and antidiscrimination statutes at issue in this action[1] for an Order Granting a Permanent injunction to Enjoin Discriminatory Housing Practices ("Motion").

This Joint Motion is made on the grounds that:

1. Rule 65(d) of the Federal Rules of Civil Procedure and the state and federal fair housing and antidiscrimination statutes at issue in this action allow the Court to grant a permanent injunction to enjoin a discriminatory housing practice. See 42 U.S.C. § 3613(c)(1) (FHA); Cal. Gov. Code § 12989.2 (FEHA); 42 U.S.C. § 12133 (ADA); 29 U.S.C. § 794a (Section 504); Cal. Gov. Code § 11139 (Section 11135).

2. On March 20, 2024, the Court granted partial summary judgment for Plaintiffs determining that that Defendant and Counter-Plaintiff City of Costa Mesa ("City") is liable for a discriminatory housing practice. ECF[2] No. 194, 41:10–44:1 (Order). Specifically, the Court determined the City violated fair housing and antidiscrimination laws by failing to provide a reasonable accommodation to Plaintiffs. Id.

---

[1]  These statutes are the Fair Housing Act, 42 U.S.C. § 3601, et seq. ("FHA") (First Claim), Title II of the Americans with Disabilities Act, 42 U.S.C. § 3601, et seq. ("ADA") (Second Claim), Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("Section 504") (Third Claim), the California Fair Employment and Housing Act, Cal. Gov. Code § 12900, et seq. ("FEHA") (Sixth Claim), and California Government Code Section 11135 ("Section 11135") (Seventh Claim).

[2]  Citations to "ECF No." refer to the Court's Case Management/Electronic Case Files system.

3. Even though the Court determined liability on Plaintiffs' reasonable accommodation claim more than six months ago, the City the City has not provided a reasonable accommodation and has taken the position that Plaintiffs are not entitled to any relief.

4. The ongoing uncertainty regarding the status of Insight's housing has caused and will continue to cause irreparable harm to Plaintiffs.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on September 26, 2024.  Declaration of Alisha Patterson ("Patterson Decl."), ¶ 14-39, Ex. 2.[3] After thoroughly discussing the substance of the contemplated Motion, the parties were unable to reach a resolution.  (Id.)

Dated:  October 3, 2024

RUTAN & TUCKER, LLP
ALISHA PATTERSON

By: _____*/s/ Alisha Patterson*_____
Alisha Patterson

Attorneys for Plaintiff and Counter-Defendant, INSIGHT PSYCHOLOGY AND ADDICTION, INC. and Counter-Defendants MARY HELEN BEATIFICATO and GERALD GROSSO

Dated: October 3, 2024

DISABILITY RIGHTS CALIFORNIA

By: _*/s/ Autumn Elliott (with permission)*_
Autumn Elliott
Zeenat Hassan

Attorneys for Plaintiff JANE DOE

---

[3]    This declaration and other declarations and exhibits in support of this Motion are filed concurrently herewith.

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................1

II.     FINDINGS OF FACT FROM SUMMARY JUDGMENT
        RULING ...........................................................................................2

III.    ARGUMENT .....................................................................................5

        A.      The Court Granted Summary Judgment on Claims that
                Allow for Injunctive Relief........................................................5

        B.      The Court May Issue A Permanent Injunction on the Facts
                of this Case.................................................................................6

                1.      Irreparable Harm ..............................................................6

                2.      Inadequate Remedies ........................................................8

                3.      Balance of Hardship .........................................................8

                4.      Public Interest ................................................................10

IV.     PLAINTIFFS HAVE STANDING TO SEEK THIS ORDER ..................10

V.      PROPOSED INJUNCTIVE RELIEF.......................................................11

        A.      Improper Application Submittal Requirements...................12

        B.      Improper Grounds for Denying Reasonable
                Accommodation Requests.........................................................13

        C.      Improper Appeal Procedures ...................................................16

        D.      Improper Unwritten Policies and Practices.............................18

VI.     THE COURT HAS FULL AUTHORITY TO ORDER THE
        RELIEF REQUESTED BY PLAINTIFFS ...................................................20

VII.    CONCLUSION ........................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Anderson v. City of Blue Ash*,
  798 F.3d 338 (6th Cir. 2015) ........................................................................... 14

*Armstrong v. Davis*,
  275 F.3d 849 (9th Cir. 2001), <u>overruled on other grounds</u> *by Johnson v.*
  *California*, 543 U.S. 499 (2005) ..................................................................... 10

*Bassilios v. City of Torrance*,
  No. CV1403059ABJEMX, 2016 WL 1273167 (C.D. Cal. Jan. 22, 2016) ........ 23

*Bresgal v. Brock*,
  843 F.2d 1163 (9th Cir. 1987) ......................................................................... 22

*Chalk v. United States Dist. Court*,
  840 F.2d 701 (9th Cir.1988) .............................................................................. 7

*City of Edmonds v. Washington State Bldg. Code Council*,
  18 F.3d 802 (9th Cir. 1994) ............................................................................. 14

*Cupolo v. Bay Area Rapid Transit*,
  5 F.Supp.2d 1078 (N.D. Cal. 1997) .................................................................... 7

*Fortyune v. City of Lomita*,
  766 F.3d 1098 (9th Cir. 2014) ......................................................................... 21

*Giebeler v. M & B Assocs.*,
  343 F.3d 1143 (9th Cir. 2003) ......................................................................... 14

*Gresham v. Windrush Partners, Ltd.*,
  730 F.2d 1417 (11th Cir. 1984) ......................................................................... 6

*Horizon House Developmental Servs., Inc. v. Twp. of Upper Southampton*,
  804 F. Supp. 683 (E.D. Pa. 1992) .................................................................... 18

*Hous. Rights Ctr. v. Donald Sterling Corp.*,
  274 F. Supp. 2d 1129 (C.D. Cal. 2003) .............................................................. 6

*La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*,
  762 F.3d 867 (9th Cir. 2014) ............................................................................. 6

**Page(s)**

**FEDERAL CASES (CONT.)**

*Lone Ranger Television, Inc. v. Program Radio Corp.*,
    740 F.2d 718 (9th Cir. 1984) ...................................................................20

*Lovell v. Chandler*,
    303 F.3d 1039 (9th Cir. 2002) ...................................................................5

*Nordstrom v. Ryan*,
    762 F.3d 903 (9th Cir. 2014) ...................................................................10

*People of State of Cal. Ex rel. Van de Kamp v. Tahoe Regional Planning Agency*,
    766 F.2d 1319 (9th Cir. 1985) .................................................................21

*Price v. City of Stockton*,
    390 F.3d 1105 (9th Cir. 2004) .................................................................22

*Schwarz v. City of Treasure Island*,
    544 F.3d 1201 (11th Cir. 2008) ...............................................................16

*State of California Dept. of Social Services v. Thompson*,
    321 F.3d 835 (9th Cir. 2003) ...................................................................20

*Sullivan v. Vallejo City Unified School Dist.*,
    731 F.Supp. 947 (E.D.Cal.1990) ...............................................................7

*TrafficSchool.com v. Edriver Inc.*,
    653 F.3d 820 (9th Cir. 2011)...................................................................20

*U.S. v. Oakland Cannabis Buyers' Co-op*,
    532 U.S. 483 (2001) ...............................................................................20

*United States v. White*,
    893 F. Supp. 1423 (C.D. Cal. 1995)...........................................................8

*Virginian Railway Co. v. System Federation No. 40, Railway Employees
    Department of the American Federation of Labor*,
    300 U.S. 515 (1937) ...............................................................................21

**Page(s)**

**FEDERAL STATUTES**

29 U.S.C.
    section 794 ............................................................................................... 2, 5, 6, 23
    section 794a ...................................................................................................... 2, 6

42 U.S.C.
    section 2000(d), et seq. ......................................................................................... 6
    section 3601, et seq. .............................................................................................. 2
    section 3613(c)(1) .................................................................................... 2, 5, 8, 23
    section 12133 ..................................................................................................... 2, 6

**STATE STATUTES**

Government Code
    section 11135 ..................................................................................................... 2, 6
    section 11139 ..................................................................................................... 2, 6
    section 12900, et seq. ............................................................................................ 2
    section 12989.2 .............................................................................................. 2, 5, 23
    section 54953(a) ................................................................................................... 17

**RULES**

Federal Rules of Civil Procedure rule 65(d) ............................................................. 1

**REGULATIONS**

28 C.F.R. section 35.150(a)(3) ................................................................................. 14

**OTHER AUTHORITIES**

Costa Mesa Municipal Code, Chapter IX, Title 13, Article 15 ............................ 2, 19

Costa Mesa Municipal Code
    section 13-200.60 .................................................................................................. 2
    section 13-200.62 ............................................... 2, 9, 10, 12, 13, 14, 16, 17, 18

I. **INTRODUCTION**

For nearly a decade (i.e., since February of 2015), Plaintiff and Counter-Defendant Insight Psychology and Addiction, Inc. ("Insight") has been providing shared housing for adults with disabilities in six-unit apartment complex in a multifamily zone in the City of Costa Mesa. The kind of housing Insight provides is exceptionally rare and desperately-needed. Insight's housing provides a therapeutic environment for individuals with mental health disabilities who are "stepping down" from 24-hour residential care (usually in a State-licensed facility) to community living.[4] It is the only housing of its kind in Orange County. Plaintiff Jane Doe ("Ms. Doe") is a former resident of Insight's housing.[5] She credits it with saving her life.

Approximately nine years ago (i.e., in December of 2015), Defendant and Counter-Plaintiff City of Costa Mesa (the "City") adopted "group homes" regulations for its multifamily zones and took the position that, under its new regulations, Insight's housing is no longer lawful. Insight requested a disability-related "reasonable accommodation" to allow it to continue providing its housing. After a costly and burdensome 2.5-year long administrative process that subjected Insight and its residents to intense public vitriol, the City denied Insight's request and ordered Insight to shut down its housing. Even since, Insight's housing has existed under a cloud of uncertainty that hinders its day-to-day operations and long-term planning. For Ms. Doe, the question of whether Insight's housing (or comparable housing) will be available when she needs is an ever-present source of fear and dread.

Rule 65(d) of the Federal Rules of Civil Procedure and the state and federal fair

---

[4]  The phrase "community living" means to be able to live where and with whom one chooses. This could include living alone, living with family, or living with roommates.
[5]  Ms. Doe has survived a long history of trauma and severe sexual abuse that started when she was a small child. ECF No. 147-1 (Declaration of Jane Doe in Support of Motion for Summary Judgment ["Doe MSJ Declaration"], ¶¶ 3-9). She has complex post-traumatic stress disorder (PTSD), anxiety, depression, and anorexia. ECF No. 147-1 Doe MSJ Declaration, ¶¶ 10-12).

housing and antidiscrimination statutes at issue in this action[6] allow the Court to grant a permanent injunction to enjoin a discriminatory housing practice. 42 U.S.C. § 3613(c)(1) (FHA); Cal. Gov. Code § 12989.2 (FEHA); 42 U.S.C. § 12133 (ADA); 29 U.S.C. § 794a (Section 504); Cal. Gov. Code § 11139 (Section 11135). Earlier this year, the Court granted partial summary judgment for Plaintiffs determining that that City **is liable for a discriminatory housing practice**. ECF No. 194, 41:10–44:1 (Order). Specifically, the Court determined the City violated fair housing and antidiscrimination laws by failing to provide a reasonable accommodation to Plaintiffs. Id. For all the reasons outlined in this Motion, the Court should enter injunctive relief for Plaintiffs that: (1) orders the City to grant Insight's request for a reasonable accommodation to allow Insight to continue providing its shared housing at the Property; and (2) enjoins the City from applying, relying on, or enforcing parts of its Reasonable Accommodation Ordinance[7] that violate state and federal fair housing and antidiscrimination laws.

## II.   FINDINGS OF FACT FROM SUMMARY JUDGMENT RULING

"Since February of 2015, Insight has leased six residential units at 2641 Santa Ana Avenue, Units A-F, Costa Mesa, CA 92626 (the "Property") and provides housing." ECF No. 194, 15:2-3. "The Property is located in a R2-MD district (Multiple-Family Residential District, Medium Density), a multifamily zoning district." Id., at 15:21-22. "There are other multi-family apartment buildings directly to the north and south of the Property." Id., at 15:22-23.

"Between February 2015 and early-2016, Insight provided shared housing at

---

[6]   These statutes are the Fair Housing Act, 42 U.S.C. § 3601, et seq. ("FHA") (First Claim), Title II of the Americans with Disabilities Act, 42 U.S.C. § 3601, et seq. ("ADA") (Second Claim), Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("Section 504") (Third Claim), the California Fair Employment and Housing Act, Cal. Gov. Code § 12900, et seq. ("FEHA") (Sixth Claim), and California Government Code 11135 ("Section 11135") (Seventh Claim).

[7]   The City's Reasonable Accommodation Ordinance is codified in Article 15 of Chapter IX of Title 13 of the Costa Mesa Municipal Code ("CMMC"), starting at CMMC Section 13-200.60. The Reasonable Accommodation Ordinance is Exhibit 8 to Plaintiffs' Request for Judicial Notice in Support of Plaintiffs' Joint Motions for Bifurcation and Injunctive Relief ("RJN"), which is filed concurrently herewith.

the Property for individuals recovering from substance use disorders." Id., at 15:9-10. "However, since late 2016, Insight has provided shared housing for individuals with a primary mental health diagnosis at the Property." Id., at 15:10-11. "From late-2016 onward, virtually all of the residents of Insight's Costa Mesa housing had a primary mental health diagnosis." Id., at 15:13-14.

"Ordinance No. 15-11 became effective on December 17, 2015, and created 'group home' regulations for Costa Mesa's multifamily residential zoning districts, including the R2-MD zoning district." Id., at 17:23-26. "Ordinance No. 15-11 required large group homes (7 or more occupants) in multi-family districts to obtain a conditional use permit ("CUP")" and "prohibited a group home from being located within 650 feet of any group home, sober living home, or state licensed drug and alcohol treatment facility, as measured from the property line." Id., at 17:27–18:3.

"In August of 2016, the City cited Insight for a number of alleged violations of its zoning ordinances" and "informed Insight that it would need to apply for a CUP to continue operating." Id., at 18:8-10. "On or about October 26, 2016, Insight submitted applications for a CUP and operator's permit." Id., at 18:11-12. "Around March 2018, the City discovered an apparent separation conflict ("Separation Conflict") for Insight's housing — Insight's housing was located within 650 feet of certain state-licensed drug and alcohol treatment facilities in unincorporated Orange County (the "County facilities")." Id., at 18:12-15. "On or about July 2, 2018, the City informed Insight of the apparent Separation Conflict, and told Insight that it would recommend denying Insight's CUP unless Insight was able to obtain approval of a 'reasonable accommodation.'" Id., at 18:15-17.

"On or about August 3, 2018, Insight submitted an application for a reasonable accommodation asking the City to either: (1) waive the 650 feet separation requirement for Insight's housing; or (2) determine that Insight's housing is not within the purview of the City's group home regulations." Id., at 18:17-20. "The Planning Commission directed staff not to relax the 650-foot separation requirement for group

homes." <u>Id.</u>, at 18:22-23. On "or about April 5, 2019, the City's Director of Economic and Development Services ("Director") denied Insight's reasonable accommodation request." <u>Id.</u>, at 18:20-22.

"Insight appealed the CUP denial to Costa Mesa's City Planning Commission ("Planning Commission") on April 12, 2019." <u>Id.</u>, at 18:25-26. "The Planning Commission denied Insight's appeal after a hearing." <u>Id.</u>, at 18:26-27. "Insight then appealed to the Costa Mesa's City Council, which also denied its appeal after another hearing." <u>Id.</u>, at 18:27-28. "The City Council adopted a Resolution upholding the Planning Commission's denial of Insight's Reasonable Accommodation Request and denying Insight's CUP." <u>Id.</u>, at 18:28–19:2. "On November 14, 2019, the City sent Insight a letter requesting Insight "cease operations of the subject group home by December 14, 2019." <u>Id.</u>, at 19:3-4.

During the summary judgment proceedings, the Court determined "Insight has demonstrated that all of its residents and Jane Doe have disabilities" and that "the City knew or reasonably should have known that Insight's housing serves residents with disabilities." <u>Id.</u>, at 42:23-27. The Court also determined that "Insight presented evidence that the requested accommodation 'may be necessary' to afford Plaintiffs an equal opportunity to use and enjoy the dwelling" because:

- "There is no other housing such as Insight's in Orange County";
- "Insight provides housing for a different clinical population—individuals with mental illness who are 'stepping down' from 24-hour residential care (usually in a state-licensed facility)";
- "Insight's housing serves individuals who are too high-functioning to require 24-hour care, but need a safe and supportive place to adjust to community living";
- "Without Insight's housing, its residents are significantly more likely to regress after leaving residential care and end up back in the hospital, or worse"; and

1       • "individuals who do not have access to supportive housing have died by

2          suicide."

3    Id., at 43:9-21.

4       The Court also determined that "Insight presented evidence that the requested

5  accommodation was possible and reasonable on its face because the City would have

6  accepted the separation waiver under a different sequence of events" (i.e., if Insight

7  had obtained approval of a CUP before the County Facilities opened, the proximity

8  of Insight's housing to the County Facilities would not have been a Separation

9  Conflict). Id., at 34:6-9. In contrast, the Court found "[t]he City has not pointed to any

10 evidence demonstrating that the accommodation was not reasonable, nor any

11 evidence that it would result in an undue hardship." ECF No.194, 34:9-10. The Court,

12 therefore, ruled that "Insight is entitled to summary judgment on the reasonable

13 accommodation claims." Id., at 44:1-2.)

14 **III.  ARGUMENT**

15     **A.  The Court Granted Summary Judgment on Claims that Allow for**

16       **Injunctive Relief**

17      The Court granted summary judgment on Insight's and Ms. Doe's claims under

18 the FHA (First Claim), ADA (Second Claim), Section 504 (Third Claim), FEHA

19 (Sixth Claim), and Section 11135 (Seventh Claim) based on the City's failure to

20 provide a reasonable accommodation. ECF No. 194, 41:10–44:1. The equitable

21 remedy of injunctive relief is expressly available under each of these legal claims.

22      The FHA expressly provides for injunctive relief. In a private civil action under

23 the FHA, "if the court finds that a discriminatory housing practice has occurred or is

24 about to occur, the court may . . .  grant as relief, as the court deems appropriate, any

25 permanent or temporary injunction." 42 U.S.C. § 3613(c)(1). The state analogue,

26 FEHA, which is Plaintiffs' Sixth Claim, is similar. Cal. Gov. Code § 12989.2.

27 Plaintiffs' Second and Third Claims are for violations of the ADA and Section 504.

28 As the Ninth Circuit explained in Lovell v. Chandler, 303 F.3d 1039, 1056 (9th Cir.

2002), "the same remedies are available for violations of Title II of the ADA and § 504 of the RA" pursuant to 42 U.S.C. § 12133 (ADA) and 29 U.S.C. § 794a (Section 504). Those remedies, in turn, are the same as those set forth in Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq., which permits an award of injunctive relief. With respect to Plaintiff's Seventh Claim, violations of California Government Code Section 11135 ("Section 11135"), the law explicitly provides that the statute "and regulations adopted pursuant [to the statute] may be enforced by a civil action for equitable relief, which shall be independent of any other rights and remedies." Cal. Gov. Code § 11139.

**B.    The Court May Issue A Permanent Injunction on the Facts of this Case**

A permanent injunction may be entered where a plaintiff demonstrates: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V., 762 F.3d 867, 879 (9th Cir. 2014), quoting eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006) (internal quotations omitted). Each of these factors is present here.

**1.    Irreparable Harm**

The first element, irreparable harm, "is presumed" where, as here, there exists "discrimination in violation of the Fair Housing Act." Hous. Rights Ctr. v. Donald Sterling Corp., 274 F. Supp. 2d 1129, 1140 (C.D. Cal. 2003), citing Silver Sage Partners, Ltd. v. City of Desert Hot Springs, 251 F.3d 814, 827 (9th Cir. 2001); see also Gresham v. Windrush Partners, Ltd., 730 F.2d 1417, 1423 (11th Cir. 1984) ("irreparable injury may be presumed from the fact of discrimination and violations of fair housing statutes"). The same is true for violations of other civil rights statutes,

such as the ADA. See Cupolo v. Bay Area Rapid Transit, 5 F.Supp.2d 1078, 1084 (N.D. Cal. 1997) ("Injuries to individual dignity and deprivations of civil rights constitute irreparable injury."); see also Chalk v. United States Dist. Court, 840 F.2d 701, 710 (9th Cir.1988); Sullivan v. Vallejo City Unified School Dist., 731 F.Supp. 947, 961 (E.D.Cal.1990) (injury to ability to function as independent person constitutes irreparable injury).

In addition to *presumed* "irreparable harm," Plaintiffs have experienced — and are continuing to experience — *actual* irreparable harm as a result of the City's unwillingness to comply with its duty to provide reasonable accommodations. The 2.5 year-long administrative process Insight endured when it sought a reasonable accommodation was invasive, costly (approximately $19,000), and burdensome. Declaration of Mary Helen Beatificato in support of Plaintiffs' Joint Motion for Bifurcation and Plaintiffs' Joint Motion for Injunctive Relief ("Beatificato Decl."), ¶¶ 11-14; ECF No. 147-3 (Declaration of Mary Helen Beatificato in Support of Motion for Summary Judgment ["Beatificato MSJ Declaration"], ¶¶ 51-72). For Ms. Doe, publicly testifying at Insight's appeal hearing inflicted in trauma she still carries to this day. Declaration of Jane Doe in support of Plaintiffs' Joint Motion for Bifurcation and Plaintiffs' Joint Motion for Injunctive Relief ("Doe Decl."), ¶¶ 5-9.

The state of uncertainty about the future of Insight's housing is ongoing. For example, as recently as September 26, 2024, counsel for the City indicated that the City's position is that Insight and Ms. Doe are not entitled to any relief in this action. Declaration of Alisha Patterson in support of Plaintiffs' Joint Motion for Bifurcation and Plaintiffs' Joint Motion for Injunctive Relief ("Patterson Decl."), ¶ 35, Ex. 2. This long-standing and ongoing uncertainty has resulted in referral partners being unwilling to work with Insight and other lost business opportunities. Beatificato Decl., ¶¶ 23-28. For Ms. Doe, the uncertainty has left her "terrified that if Insight does not exist, I will have nowhere to go, and my mental health will deteriorate to the point where I have to be hospitalized again." Doe Decl., ¶ 18.

## 2.    Inadequate Remedies

Because the type of harm caused by violations of fair housing and civil rights statutes is irreparable, the second element of injunctive relief — inadequacy of remedies such as monetary damages — is also met. Where, as here, "a statute expressly provides for injunctive relief, … the party need not establish irreparable injury or inadequate legal remedies." United States v. White, 893 F. Supp. 1423, 1430 (C.D. Cal. 1995); see, e.g., 42 U.S.C. § 3613(c)(1) (FHA expressly provides for injunctive relief); see generally Section III.A, above (citing other statutes).

Here, there are no adequate remedies to redress the harm Insight and Ms. Doe experienced and are continuing to experience as a result of the City's failure to comply with fair housing and antidiscrimination laws. Insight fully exhausted its administrative remedies — it requested a reasonable accommodation and appealed the denials of its request through the City's administrative process. Beatificato Decl., ¶¶ 11-14; ECF No. 147-3 (Beatificato MSJ Decl., ¶¶ 51-75). As discussed in the previous subsection, the ***administrative process itself was harmful*** (i.e., it was costly, invasive, burdensome, and subjected Insight and Ms. Doe to public vitriol). Id. Worse yet, the City made Insight and Ms. Doe run this gauntlet ***knowing it was futile*** — denial was always a foregone conclusion. ECF No. 194, 18:22-23 ("The Planning Commission directed staff not to relax the 650-foot separation requirement for group homes."). Monetary damages are equally inadequate. If Insight's housing is not available to the people who need it (and there is no comparable housing because no one else can make it through the City's gauntlet), then no amount of money can fill this void. Doe Decl., ¶¶ 18-19; Beatificato Decl., ¶¶ 32-34.

## 3.    Balance of Hardship

The latter two elements are met because Plaintiffs seek an injunction requiring the City to comply with the provisions of federal and state disability rights laws. Here, the weight of hardship falls exclusively on Plaintiffs' side. For every day that passes without an injunction, Insight's housing is under an ever-present threat of closure.

Beatificato Decl., ¶¶ 23-29. This interferes with business relationships, day-to-day operations, and long term planning. Id., at ¶¶ 23-34. Insight would like to provide more mental health housing in Costa Mesa, but Insight has no desire to run the City's gauntlet again. Id., at ¶¶ 32-34. It does not make sense for Insight to pursue these opportunities until the City brings its ordinances and procedures into compliance with state and federal fair housing and antidiscrimination laws. Id., at ¶ 34. Without injunctive relief, Ms. Doe faces continued and unnecessary distress. Doe Decl., ¶¶ 10-20; see also ECF No. 193, p. 43 ("Without Insight's housing, its residents are significantly more likely to regress after leaving residential care and end up back in the hospital, or worse. . .  Moreover, Insight has presented evidence that individuals who do not have access to supportive housing have died by suicide.").

By contrast, there can be no cognizable hardship to the City. Insight's shared housing has been in Costa Mesa for nearly a decade and has not created the "parade of horribles" the City feared (e.g., overcrowding, traffic congestion, parking impacts, a water shortage, etc.). Other than two Administrative Citations in August and October of 2016 (which were largely based on Insight's housing not having a CUP), the City has not reported any complaints to Insight, nor has the City issued any notices of violation or any further Administrative Citations. Beatificato Decl., ¶¶ 4-10. If Insight's housing becomes a problem in the future, the relief Plaintiffs are seeking would not prevent the City from enforcing generally applicable ordinances, like the City's Noise and Nuisance Ordinances.

The injunctive relief Plaintiffs seek would require the City to take steps that are already required by federal and state law — and have been for years — but that the City has nonetheless failed to take. Importantly, consistent with the directives of the California Department of Housing and Community Development ("HCD") (RJN, Ex. 3, 4, and 6), the City recently committed to amend its Reasonable Accommodation Ordinance through its Sixth Cycle Housing Element Update by December of 2024. RJN, Ex. 5 (Program 2N, pp. 4-11 to 4-12); Patterson Decl., ¶¶ 40-45. The injunctive

1  relief Plaintiffs are seeking is consistent with this commitment by the City.[8]

2  ### 4.  Public Interest

3  With respect to the final element, it could not be more clearly in the public
4  interest for the City to bring its Reasonable Accommodation Ordinance and
5  procedures into compliance with federal and state fair housing and disability rights
6  laws. These laws were designed to allow people with disabilities equal access to
7  housing, as well as to the programs, services, and activities of public entities. The
8  public has a strong interest in the achievement of an integrated society in which people
9  with disabilities are able to fully participate. This public interest is furthered when
10  public entities comply with these civil rights laws.

11  ## IV.  PLAINTIFFS HAVE STANDING TO SEEK THIS ORDER

12  In addition to meeting the four elements described above, a plaintiff seeking
13  injunctive relief must establish standing. A plaintiff seeking prospective injunctive
14  relief can establish standing if he or she is threatened by a repetition of the violation
15  of the law. Nordstrom v. Ryan, 762 F.3d 903, 911 (9th Cir. 2014). The Ninth Circuit
16  has held that a party may demonstrate a threat of repetition at least two ways:

17  First, a plaintiff may show that the defendant had, at the time of
18  the injury, a written policy, and that the injury 'stems from' that
19  policy. . . . Second, the plaintiff may demonstrate that the harm
20  is part of a pattern of officially sanctioned . . . behavior, violative
21  of the plaintiffs' [federal] rights.

22  Id. (alterations in original) (internal citations omitted). In other words, where the harm
23  to the plaintiff was the result of the defendant's policy or officially sanctioned
24  practice, the plaintiff has established that there is a threat of repetition. Absent a
25  change in that policy or officially sanctioned practice, the plaintiff remains subject to
26  the threat of a repeated violation in the future. See also Armstrong v. Davis, 275 F.3d

27
28  [8]  Although Program 2N of the City's Housing Element Update commits to amend the Reasonable Accommodation Ordinance by December of 2024 (RJN Ex. 5), there is no evidence the City has started this process. Patterson Decl., ¶ 44.

1  849, 861 (9th Cir. 2001), <u>overruled on other grounds by</u> <u>Johnson v. California</u>,

2  543 U.S. 499 (2005) ("Thus, where the defendants have repeatedly engaged in the

3  injurious acts in the past, there is a sufficient possibility that they will engage in them

4  in the near future to satisfy the 'realistic repetition' requirement.").

5       Insight and Ms. Doe each have standing for all of the injunctive relief sought

6  in this case. Insight has standing to seek an injunction ordering the City to grant the

7  reasonable accommodation it unlawfully denied and allow Insight to continue to

8  provide shared housing in its current location. As of the submission of this brief, the

9  City still has not done so, despite the Court's finding over six months ago that Insight

10 was entitled to summary judgment on its reasonable accommodation claim. There is

11 no indication the City will provide an accommodation unless the Court orders it to do

12 so. As of September 26, 2024, the City continued to dispute that Insight is entitled to

13 any relief. Patterson Decl., Ex. 2.

14      Both Ms. Doe and Insight also have standing to seek an order that the City

15 cease employing the discriminatory rules, practices, and procedures that were a barrier

16 to Insight obtaining a reasonable accommodation in this case. These discriminatory

17 rules, practices, and procedures are outlined and below in Section V. If the City can

18 continue to apply, rely on, and enforce them, they will operate to prevent Insight from

19 ever obtaining another reasonable accommodation should Insight need to relocate or

20 want to provide housing at a different location in Costa Mesa. This directly harms

21 Insight and Ms. Doe. Beatificato Decl., ¶¶ 32-34; Doe Decl., ¶¶ 5-20. The

22 discriminatory rules, practices, and procedures also operate to prevent other shared

23 housing providers from providing housing for people with disabilities, which directly

24 harms Ms. Doe. Doe Decl. ¶ 19; <u>see also</u> ECF No. 194, p. 43 ("There is no other

25 housing such as Insight's in Orange County.").

26 **V.    <u>PROPOSED INJUNCTIVE RELIEF</u>**

27      The Court should order the City's Director of Economic and Development

28 Services ("Director") to grant Insight's request for a reasonable accommodation to

allow Insight to continue providing its shared housing at the Property. The Court's order should also enjoin the City from:

- Requiring Insight to obtain any further City approvals to continue providing its housing, such as a conditional use permit, a special use permit, or an operator's permit;
- Treating Insight's housing like it is different from any other multifamily housing; or
- Instituting code enforcement, nuisance abatement, or any other enforcement proceedings solely on the basis that Insight's housing is a "group home" or that Insight's housing does not have a conditional use permit or operator's permit.[9]

As discussed in more detail in the following subsections, the Court should also enjoin the City from applying, relying on, or enforcing unlawful provisions in its Reasonable Accommodation Ordinance and unwritten City policies and practices.

## A.   **Improper Application Submittal Requirements**

The City's Reasonable Accommodation Ordinance requires applicants to provide "Any other information that the director reasonably determines is necessary for evaluating the request for reasonable accommodation" (§ 13-200.62(b)(3)) and "Any other information that the hearing officer reasonably concludes is necessary to determine whether the findings required by subsection (e) of this section can be made" (§ 13-200.62(b)(7)). RJN, Ex. 7. In Insight's case, the City used these provisions to demand Insight supplement its application at least three times over the course of approximately four months. ECF No. 147-3, p. 10 of 31 (Beatificato Decl., ¶ 56). For Insight, the City's demands for "additional information" were onerous and invasive, and ultimately had nothing to do with the factors state and federal law allow an agency to consider in connection with a request for a disability-related accommodation.

---

[9]   To be clear, Plaintiffs are not asking the Court to enjoin the City from enforcing its Nuisance Ordinance, Noise Ordinance, or any other part of the City's Municipal Code or Zoning Code that applies to multifamily housing.

For example, the City demanded Insight provide the following information:

- A list of Insight's referral sources (i.e., the hospitals and residential care facilities that refer their patients to Insight for "step down" supportive housing) (ECF No. 147-6, pp. 1-2);

- Information about Insight's advertising and marketing practices (ECF No. 147-6, p. 2); and

- The amount of rent Insight charges residents for its shared housing and the sources of funds Insight's residents use to pay their rent (ECF No. 147-6, p. 2);

Although Insight provided ***all*** of the information the City requested, the City relied on these open-ended provisions when it denied Insight's accommodation request. One of the City's stated bases for denial was that "no evidence has been presented" to support several of the findings the City's Ordinance required to grant a reasonable accommodation request.[10] ECF No. 147-20, pp. 2-3 (Director Denial Letter); ECF No. 147-48, pp. 6-7 (Planning Commission Denial Resolution); ECF No. 147-54, pp. 6-7 (City Council Denial Resolution). Without an order enjoining the City from relying on and enforcing these open-ended provisions, the City can continue to use them to make its reasonable accommodation submittal process a protracted, burdensome, invasive, and ultimately futile exercise.

## B.  **Improper Grounds for Denying Reasonable Accommodation Requests**

The City should be enjoined from enforcing "considerations" (RJN Ex. 7 [§ 13-200.62(e) and (g)]) and "findings" (§ 13-200.62(f)) in its Reasonable Accommodation Ordinance that improperly shift the burden to the applicant or allow the Director to deny a request on grounds that are inconsistent with fair housing and disability rights laws. (It is important to note that the "considerations" in Sections 13-200.62(e) and

---

[10]  As discussed in the next Section, these findings do not comply with state or federal law.

(g) overlap with the "findings" in Section 13-200.62(f) of the Reasonable Accommodation Ordinance, which makes it very difficult for applicants, and presumably, staff at the City itself to understand how the City will make its decision.)

First, the Court should enjoin the City from putting the burden on the individual making the reasonable accommodation request to establish the accommodation is not:

- An "undue financial or administrative burden" (§ 13-200.62(f)(3));
- A direct threat to health and safety of people and property (§ 13-200.62(f)(5)); or
- A fundamental alteration in the nature of the City's zoning program (§ 13-200.62(f)(8) & (g)).

Requiring an applicant to ***prove a negative*** is an impossible task. It is the City's burden to establish one or more of these bases for denial. ECF No. 194, 43:22-23; Giebeler v. M & B Assocs., 343 F.3d 1143, 1156-1159 (9th Cir. 2003); see generally 28 C.F.R. § 35.150(a)(3). For Insight, the Director's denial letter and the Planning Commission and City Council denial Resolutions make clear that: (1) the City put these burdens on Insight, and (2) denied Insight's request for an accommodation because, in the City's view, Insight did not meet these burdens. ECF No. 147-3 (Beatificato MSJ Decl., ¶ 73(a)); see generally ECF No. 147-20 (Director denial); ECF No. 147-48 (Planning Commission denial); ECF No. 147-54 (City Council denial).

Second, the Court should enjoin the City from denying a request for an accommodation solely on the basis that the accommodation is inconsistent with "a City program, such as the City's zoning scheme" or the "City's General Plan" (§ 13-200.62(e)(2), (g)(3)). The purpose of reasonable accommodations is to allow for these deviations. "Requiring public entities to make exceptions to their rules and zoning policies is exactly what the FHAA does." Anderson v. City of Blue Ash, 798 F.3d 338, 363 (6th Cir. 2015); City of Edmonds v. Washington State Bldg. Code Council, 18 F.3d 802, 806 (9th Cir. 1994) (FHA imposes an affirmative duty to reasonably

accommodate disabled persons). For Insight, the City used this kind of tautological reasoning as a basis to deny Insight's accommodation — "the City relied solely on the fundamental alteration argument and the idea that it cannot waive the separation requirement—as doing so would undermine its argument that the separation argument is fundamental." ECF No. 194, 43:23-25.

Third, the Court should enjoin the City from applying more stringent development standards for shared housing for people with disabilities than it applies to other forms of housing. For example, the City should be enjoined from taking into account whether "the accommodation would result in a substantial increase in traffic or insufficient parking" (§ 13-200.62(g)(2)); whether "the requested accommodation would create an institutionalized environment due to the number of and distance between facilities that are similar in nature or operation" (§ 13-200.62(g)(4)); and whether "the requested accommodation is consistent with surrounding uses in scale and intensity of use" (§ 13-200.62(f)(4)). If the proposed shared housing has the same number of residents as housing the City would otherwise consider to be a "single family housekeeping unit," then the City should be enjoined from applying heightened standards for the shared housing. For example, in Insight's case, if Insight stopped providing its shared housing, the same six units could be used for multifamily housing occupied by the same number of occupants (or more) with the same number of occupants. ECF No. 147-5 (Declaration of Mark Binder in Support of Plaintiffs' Motion for Summary Judgment ["Binder MSJ Decl."], ¶¶ 16-19); ECF No. 147-3 (Beatificato MSJ Decl., ¶ 73(e)-(l)).

Fourth, the Court should enjoin the City from requiring applicants for a reasonable accommodation to establish "that the requested accommodation is necessary to make facilities of a similar nature or operation economically viable in light of the particularities of the relevant market and market participants generally, not just for that particular applicant" (§ 13-200.62(f)(6)). Requiring an applicant to provide a feasibility study or market study as a condition of approving a disability-

related accommodation is incredibly expensive, onerous, and invasive. Declining to undertake this burden cannot be a basis for denial.

Finally, the Court should enjoin the City from considering "whether the existing supply of facilities of a similar nature and operation in the community is sufficient to provide individuals with a disability an equal opportunity to live in a residential setting" (§ 13-200.62(f)(7)). As a legal matter, the "availability of another dwelling somewhere within a city's boundaries is irrelevant" to a municipality's duty to make reasonable accommodations. <u>Schwarz v. City of Treasure Island</u>, 544 F.3d 1201, 1225-26 (11th Cir. 2008). The fair housing laws protect the right of individuals to live in the residence of their choice in the community, not in a location the City might choose. And as a practical example, if other homes in the City had wheelchair ramps, the City could use this "consideration" as a basis to deny a resident's request to build a wheelchair ramp at the resident's own home (i.e., the City could determine the resident should move to another home that already has a wheelchair ramp, rather than allowing the resident to build a wheelchair ramp at the resident's home). That sounds absurd in the context of wheelchair ramps, but the City used the same logic to deny Insight's request (i.e., there are other group homes in the City, so Insight and its residents don't need a group home on the property where Insight was already providing housing). ECF No. 147-3 (Beatificato MSJ Decl., ¶ 73(m)); <u>see generally</u> ECF No. 147-20 (Director denial); ECF No. 147-48 (Planning Commission denial); ECF No. 147-54 (City Council denial).

### C.      <u>Improper Appeal Procedures</u>

The City's Reasonable Accommodation Ordinance allows ***virtually anyone*** (including members of the City Council) to appeal the Director's decision granting or denying a reasonable accommodation request.  RJN Ex. 7 (§ 13-200.62(d)); RJN Ex. 8 (§ 2-302, § 2-303(1)).  The Ordinance requires an appeal to be heard by the City's Planning Commission, and if the Planning Commission's decision is appealed, by the City Council. RJN Ex. 8 (§ 2-309). The City must provide public notice of the appeal

hearing (RJN Ex. 8 [§ 2-308]), and because the Planning Commission and City Council are legislative bodies, members of the public must be permitted to attend and testify at the appeal hearing (Cal. Gov. Code § 54953(a)). The City should be enjoined from enforcing the requirement in its Reasonable Accommodation Ordinance that requires public noticing and a public hearing for appeals of the Director's decision on a reasonable accommodation request. Plaintiffs' experiences with this process are a case-in-point on why the rights of people with disabilities should not be adjudicated by appointed and elected legislative bodies in a public forum.

Insight's appeals of the Director's denial resulted in the City posting, publishing, and sending mailed notices to all of the properties surrounding Insight's housing identifying it as shared housing for people with disabilities. Beatificato Decl., ¶ 12. Neighbors and members of the broader community who had never previously voiced any concerns about Insight's housing were suddenly inflamed at the prospect of having a "group home" in their community. Id. At the appeal hearings, members of the community were openly hostile towards Ms. Beatificato and anyone else who supported Insight, including Ms. Doe. Id.; Doe Decl., ¶¶ 6-9. The large crowds of people in attendance said "all kinds of bad things about people with disabilities that are not true" and made Ms. Doe feel "unwelcome in Costa Mesa." Doe Decl. ¶¶ 6-8. For example, at the Planning Commission hearing, a speaker testified that a person who is "mentally disabled does not belong in a neighborhood next door to me or any of us in this room." ECF No. 147-52, p. 53. At the City Council hearing, a speaker testified that he didn't want the City of Costa Mesa to be a "mentally disabled institution and community" and that the "mentally ill cannot associate with our children, neighbors." ECF No. 147-52, pp. 53-54. The discriminatory animus Plaintiffs experienced is not a proper grounds for denying a reasonable accommodation — in fact, it should play no part in the consideration of such a request at all.

Relatedly, the City should not give anyone but an aggrieved applicant standing

to appeal the Director's decision on a reasonable accommodation request (§ 13-200.62(d)). The City's broad standing requirements allow any member of the public to appeal the Director's approval of a reasonable accommodation request, and any member of the City Council to "call up" the Director's decision for any reason (including reasons that are blatantly discriminatory). The appeal procedure should not provide a pathway for a third party with animus, fear, or prejudice about people with disabilities to delay or derail the City's approval of an accommodation request.

### D.  <u>Improper Unwritten Policies and Practices</u>

In addition to the problems in the City's Reasonable Accommodation Ordinance (RJN Ex. 7), the City has a number of unwritten rules, practices, and procedures that are discriminatory and operated to prevent Insight from obtaining a reasonable accommodation. First, the specific reasonable accommodation that Insight requested was either: to either: (1) waive the 650 feet separation requirement for Insight's housing; or (2) determine that Insight's housing is not within the purview of the City's group home regulations. ECF 194, p. 18. But the City completely ignored Insight's second request and denied the first request because the City had an unwritten blanket policy of ***never*** relaxing its separation requirement. ECF No. 147-65, pp. 8-11; ECF 147-64, pp. 66-67; ECF No. 147-63, pp. 18-19, 47-48, 60-61; <u>see generally</u> ECF No. 164-3. This Court found that the "The Planning Commission directed staff not to relax the 650-foot separation requirement for group homes." ECF No. 194, p. 18. This blanket policy does not comply with the law, which requires cities like Costa Mesa to grant reasonable accommodations unless they can show that "the requested accommodation was not necessary, not reasonable, or would cause undue hardship." ECF No. 194, p. 43. Enforcing an unwritten rule requiring the categorical denial of accommodation requests violates the City's duty to make reasonable accommodations. <u>Horizon House Developmental Servs., Inc. v. Twp. of Upper Southampton</u>, 804 F. Supp. 683, 700 (E.D. Pa. 1992).

Second, the City Council hearing on Insight's reasonable accommodation

request was subject to arbitrary and capricious rules that were not disclosed to Insight in advance of the hearing. For example, Ms. Beatificato came to the City Council appeal hearing with a pre-prepared presentation, including powerpoint slides. ECF No. 147-3 (Beatificato MSJ Decl., ¶ 71). The City did not tell Ms. Beatificato ahead of time of that the Mayor would impose any time limit for her testimony. Id. However, when Ms. Beatificato was about halfway through her presentation, the Mayor abruptly cut her off, told Ms. Beatificato that her time was up, and refused to allow her to finish her presentation. Id. The City should be enjoined from applying arbitrary and undisclosed rules to reasonable accommodation hearings that prevent individuals or entities from presenting their reasonable accommodation requests.

Third, the City applied portions of its reasonable accommodation ordinance (Article 15 of Title 13 of the Costa Mesa Municipal Code, starting at Section 13-200.60 [RJN Ex. 7]) to Insight in a discriminatory way. In conformance with its Ordinance, the City placed the burden on Insight to establish that its accommodation request would not cause an undue hardship on the City, when the law requires that to be the City's burden to establish. ECF Nos. 147-20, 147-48, and 147-54. Relatedly, the City repeatedly asked Insight to provide more and more information (ECF 147-3 [Beatificato MSJ Decl., ¶¶ 55-56]), then denied Insight's accommodation request on the grounds that it failed to "include adequate information to allow [the Planning Director] to make all of the required findings set forth in the" reasonable accommodation ordinance. ECF Nos. 147-20, 147-48, and 147-54.

The injunctive relief requested by Plaintiffs is consistent with a directive the State's Department of Housing and Community Development ("HCD") gave to the City. In a November 29, 2023 letter, HCD told the City it:

> (i) must avoid denying requested accommodations based on fears or prejudicial assumptions about people with disabilities, such as that group home residents somehow uniquely cause problematic traffic, noise, or activity; (ii) may not place the burden on

1        reasonable accommodation applicants to demonstrate that their

2        requested accommodations would not create undue burdens on

3        the City or fundamental alterations to its zoning code; (iii) may

4        not require applicants to show that they could not find any other

5        housing within the city that would meet their disability related

6        needs; and (iv) must engage in good faith with reasonable

7        accommodation requests and avoid delay or burdensome

8        procedural requirements.

9 RJN Ex. 6, pp. 9-10.

10 Without an injunction from this Court, Insight and Ms. Doe will continue to be

11 subject to the same kinds of discriminatory housing practices that HCD has directly

12 instructed the City to avoid.

## VI. THE COURT HAS FULL AUTHORITY TO ORDER THE RELIEF REQUESTED BY PLAINTIFFS

15 "The scope of an injunction is within the broad discretion of the district court."

16 TrafficSchool.com v. Edriver Inc., 653 F.3d 820, 829 (9th Cir. 2011); see also Lone

17 Ranger Television, Inc. v. Program Radio Corp., 740 F.2d 718, 720 (9th Cir. 1984)

18 ("The scope of an injunction, even on summary judgment, lies in the district court's

19 discretion."). A district court's discretion is especially broad when the injunction is in

20 the public interest. "The district court has considerable discretion to fashion

21 appropriate injunctive relief, particularly where the public interest is involved." State

22 of California Dept. of Social Services v. Thompson, 321 F.3d 835, 857 (9th Cir. 2003)

23 (internal quotation marks omitted); see also U.S. v. Oakland Cannabis Buyers' Co-

24 op, 532 U.S. 483, 496 (2001) ("[W]hen district courts are properly acting as courts of

25 equity, they have discretion unless a statute clearly provides otherwise. For 'several

26 hundred years,' courts of equity have enjoyed 'sound discretion' to consider 'the

27 necessities of the public interest' when fashioning injunctive relief.").

28 In fact, district courts have "***greater power*** to fashion equitable relief in defense

1  of the public interest than . . . when only private interests are involved." <u>People of</u>
2  <u>State of Cal. Ex rel. Van de Kamp v. Tahoe Regional Planning Agency</u>, 766 F.2d
3  1319, 1324 (9th Cir. 1985) (citations to <u>Virginian Railway Co. v. System Federation</u>
4  <u>No. 40, Railway Employees Department of the American Federation of Labor</u>,
5  300 U.S. 515, 552 (1937), omitted) (emphasis added). In this context, a district court
6  "may define the public interest by reference to the policies expressed in legislation."
7  <u>Id.</u> An injunction may legitimately be aimed at preventing a local government agency
8  "from asserting its powers in a manner that may be inconsistent with the legislative
9  mandate." <u>Id.</u> In <u>Fortyune v. City of Lomita</u>, 766 F.3d 1098, 1101 (9th Cir. 2014), the
10 Ninth Circuit described the policies expressed in the ADA as follows:

11              "Congress enacted the ADA in 1990 to remedy widespread
12              discrimination against disabled individuals." <u>PGA Tour, Inc. v.</u>
13              <u>Martin</u>, 532 U.S. 661, 674, 121 S.Ct. 1879, 149 L.Ed.2d 904
14              (2001). The statute provides a "comprehensive," "broad mandate"
15              to eliminate discrimination against disabled persons, addressing
16              both "outright intentional exclusion" as well as the "failure to
17              make modifications to existing facilities and practices." <u>Id.</u> at 675,
18              121 S.Ct. 1879 (internal quotation marks and citations omitted);
19              <u>see also</u> <u>Cohen v. City of Culver City</u>, 754 F.3d 690, 694 (9th
20              Cir.2014); 42 U.S.C. § 12101(b)(1). "We construe the language
21              of the ADA broadly to advance its remedial purpose." <u>Cohen</u>, 754
22              F.3d at 695.

23         The relief requested here would undoubtedly benefit other individuals beyond
24 Ms. Doe, and other housing providers beyond Insight. But a court's discretion
25 includes the authority to issue an injunction that benefits a large class of individuals,
26 even where the case was brought by individual plaintiffs:

27              [A]n injunction is not necessarily made overbroad by extending
28              benefit or protection to persons other than prevailing parties in the

1    lawsuit—even if it is not a class action—if such breadth is
2    necessary to give prevailing parties the relief to which they are
3    entitled. . . . Class-wide relief may be appropriate even in an
4    individual action.

5    Bresgal v. Brock, 843 F.2d 1163, 1170-71 (9th Cir. 1987) (emphasis omitted)

6    (upholding District Court injunction requiring enforcement of Migrant and Seasonal

7    Workers Act on nationwide basis in non-class action case). While an injunction

8    cannot bind entities that are not a party to a suit, it can benefit them. Id. at 1170. The

9    Ninth Circuit reiterated that holding in Price v. City of Stockton, 390 F.3d 1105 (9th

10   Cir. 2004), in which it upheld a District Court injunction requiring a municipal

11   defendant to provide benefits to all entitled displaced persons in a non-class action

12   case. "[A]n injunction benefiting nonparties is permissible if such breadth is necessary

13   to give prevailing parties the relief to which they are entitled." Id. at 1117-18 (internal

14   quotation marks omitted).

15       Two cases from this federal district are illustrative of this point. First, for

16   example, the district court in Huezo v. LACCD issued a sweeping injunction

17   benefitting large numbers of people with disabilities, even though the case was

18   brought by a single individual plaintiff. Case No. CV 04-09772 MMM (JWJX), 2008

19   WL 4184659 (C.D. Cal. Sept. 9, 2008). The injunction required the Los Angeles

20   Community College District ("LACCD") to place accessible desks, workstations, and

21   other special equipment in classrooms throughout Pierce College under the oversight

22   of an access expert; to publicize the modification of policies and accommodations

23   available as a result of the permanent injunction in written materials provided to

24   disabled students at all student orientations; and to remove physical barriers

25   throughout campus under the oversight of a physical access expert. Id., at 2-3. The

26   injunction also required LACCD to establish a regularly scheduled wheelchair

27   accessible shuttle at Pierce College "that will take disabled students to all portions of

28   the campus that do not have accessible paths of travel" and prohibited LACCD from

1  requiring that "disabled students make advanced appointments or sign-up with the

2  DSPS office to be allowed to use this service." Id., at 2.

3        Second, in Bassilios v. Torrance, the district court did not just order the City of

4  Torrance to provide the sole individual plaintiff with an on-street "Blue Curb"

5  handicapped parking space. The Court also ordered the City to (a) comply with federal

6  regulations if it denied requests for Blue Curb parking spaces from *anyone* in the City;

7  (b) to appoint and train an ADA/504 Coordinator; and (c) to adopt a grievance

8  procedure providing "for the prompt and equitable resolution of complaints" from

9  *anyone* alleging "*any* action prohibited by the ADA and Section 504." Bassilios v.

10 City of Torrance, No. CV1403059ABJEMX, 2016 WL 1273167, at *1 (C.D. Cal. Jan.

11 22, 2016) (emphasis added).

12       Ultimately, the fair housing laws that the Court held that Costa Mesa violated

13 when it refused to grant Insight's accommodation request contemplate broad relief

14 when necessary to prevent a defendant from continuing to engage in a discriminatory

15 housing practice. The Fair Housing Act specifically provides that if a court has found

16 that a defendant has engaged in a discriminatory housing practice, the court may issue

17 an order "enjoining the defendant from engaging in such practice or ordering such

18 affirmative action as may be appropriate." 42 U.S.C. § 3613(c)(1). The state FEHA

19 is similar, providing that a court may issue an injunctive order "as it deems appropriate

20 to prevent any defendant from engaging in or continuing to engage in an unlawful

21 practice." Cal. Gov. Code § 12989.2.

22 **VII.  CONCLUSION**

23       The City has demonstrated time-and-time again that, with respect to Insight's

24 shared housing, the City is unable or unwilling to comply with state and federal fair

25 housing and antidiscrimination laws that require it to provide a reasonable

26 accommodation that ensures Insight's residents (including Ms. Doe) have an equal

27 opportunity to enjoy the housing they rely on. The longstanding and ongoing

28 uncertainty regarding the future of Insight's housing is causing great harm to Insight

and Ms. Doe. After 2.5 years of administrative proceedings and nearly five years of litigation, they have exhausted all other options. Insight and Ms. Doe respectfully request the Court enter an order granting injunctive relief.

Dated:  October 3, 2024

RUTAN & TUCKER, LLP
ALISHA PATTERSON


By:_____*/s/ Alisha Patterson*_____
Alisha Patterson

Attorneys for Plaintiff and Counter-Defendant, INSIGHT PSYCHOLOGY AND ADDICTION, INC. and Counter-Defendants MARY HELEN BEATIFICATO and GERALD GROSSO


Dated: October 3, 2024

DISABILITY RIGHTS CALIFORNIA


By:__*/s/ Autumn Elliott (with permission)*__
Autumn Elliott
Zeenat Hassan

Attorneys for Plaintiff JANE DOE