UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INSIGHT PSYCHOLOGY AND ADDICTION, INC., and JANE DOE,<br><br>    Plaintiffs,<br><br>    v.<br><br>CITY OF COSTA MESA, ET AL.,<br><br>    Defendants. | Case No.:  8:20-cv-00504-MEMF-JDE<br><br>**ORDER GRANTING MOTION FOR INJUNCTIVE RELIEF IN PART AND GRANTING EX PARTE APPLICATION TO AMEND SCHEDULING ORDER [ECF NOS. 210, 235]** |
| CITY OF COSTA MESA,<br><br>    Counterclaimant,<br><br>    v.<br><br>INSIGHT PSYCHOLOGY AND ADDICTION, INC., ET AL.,<br><br>    Counter-Defendants. | |

    The following items are before the Court: (1) a Motion for Injunctive Relief filed by Plaintiffs Insight Psychology and Addiction, Inc. and Jane Doe (ECF No. 210); and (2) an Ex Parte Application to Modify the Scheduling Order filed by Defendant and Counterclaimant City of Costa

Mesa (ECF No. 235). For the reasons stated herein, the Court GRANTS IN PART the Motion for Injunctive Relief (ECF No. 210) and GRANTS the Ex Parte Application (ECF No. 235).

## BACKGROUND

The Court has discussed the background of this action at length in previous Orders (*see, e.g.*, ECF No. 194), and so will only briefly reiterate it here.

### I.  Summary of Relevant Facts

Plaintiffs and Counterclaim Defendant Insight Psychology and Addiction, Inc. ("Insight") operates a property (the "Property") where it provides shared housing for individuals with a primary mental health diagnosis. *See* ECF No. 194 at 15. Insight does not provide treatment at the Property. *See id.* The Property is within the jurisdiction of Defendant and Counterclaimant City of Costa Mesa the "City"). *See id.*

In August of 2016, the City informed Insight that Insight needed to apply for a Conditional Use Permit ("CUP") to continue operating. *See id.* at 18. Insight applied for a CUP in October of 2016. *See id.* The City informed Insight that because the Property was located near state-licensed drug and alcohol treatment facilities, which are located outside the City in unincorporated Orange County, Insight would need an accommodation to receive approval for its CUP. *See id.* The City denied Insight's request for an accommodation in April of 2019. *See id.* Insight appealed that denial, and the appeal was denied. *See id.* In November of 2019, the City sent Insight a letter directing Insight to cease operations of the Property by December 14, 2019. *See id.* at 19.

### II.  Procedural History of the Action

Insight filed suit in this Court on March 12, 2020, and filed a First Amended Complaint, joined by additional Plaintiff Jane Doe ("Doe"), on August 7, 2020. *See* ECF Nos. 1, 28. The City filed a Counterclaim, the operative version of which is currently the Third Amended Counterclaim, filed on January 11, 2021. *See* ECF No. 59.

On March 20, 2024, the Court issued an Order granting in part the parties' motions for summary judgment. *See* ECF No. 194 ("MSJ Order"). The Court made various findings of fact in the MSJ Order. *See id.* at 14–18. In the MSJ Order, the Court held that Insight had shown it was entitled to prevail on its failure to accommodate claims, and thus established liability on those claims. *See id.*

at 41–43. The remedy for those claims has yet to be determined. *See id.*; *see also* ECF No. 223 at 2. Some of Insight's other claims remain at issue. *See* ECF No. 223. Also still at issue is the City's counterclaim seeking a declaratory judgment that Insight is operating as a nuisance. *See id.*; *see also* ECF No. 223; ECF No. 59 at 53; ECF No. 90.

### III. The Instant Motions

On October 3, 2024, Insight and Doe filed the instant Motion for Injunctive Relief (ECF No. 210) and Request for Judicial Notice (ECF No. 211). Also on October 3, 2024, Insight and Doe filed a Motion to Bifurcate Proceedings (ECF No. 208) and an additional Request for Judicial Notice related to that Motion (ECF No. 209). On October 21, 2024, the Court issued an Order denying Insight's Motion to Bifurcate Proceedings, which had requested that the Court first hold a bench trial as to whether Insight was entitled to equitable relief on the failure to accommodate claim, and then hold a separate jury trial on other issues if necessary. *See* ECF No. 223. The Court explained that it would not be appropriate to hold a bench trial and make findings of fact (beyond the facts found undisputed at summary judgment) that would then bind the jury and usurp its fact finding role, and that instead, so long as there remain some issues that require jury trial, the Court would not settle any issues of fact on which there is a genuine dispute prior to that trial. *See id.* at 3. As to Insight's Motion for Injunctive Relief, the Court stated the following:

> The Court's understanding is that Plaintiffs have two procedurally different requests related to injunctive relief—they request first (via the Motion for Injunctive Relief) that the Court grant injunctive relief based on the current record, arguing that the findings of fact the Court made at the summary judgment stage entitled Plaintiffs to injunctive relief; and request in the alternative (via the Motion for Bifurcation) that to the extent that the Court finds that further findings of fact are required, that the Court hold a bench trial as to issues related to injunctive relief before holding a jury trial if necessary on other issues. *See* ECF No. 208 at 8 (explaining that the Court may order "separate trials" on different issues). Thus, while the Court finds that it would not be economical and would be potentially inappropriate to hold a bench trial as to equitable relief first while issues for jury trial remain, it does not follow from this finding that the Court cannot grant Plaintiffs' Motion for Injunctive relief based on the facts already found undisputed at summary judgment.

*Id.* at 3 n.1. The Court held the Motion for Injunctive Relief in abeyance and did not decide it in the previous Order but explained that it might be appropriate to grant the Motion for Injunctive Relief if Insight had shown that the facts found at summary judgment made clear Insight was entitled to the relief sought. *See* ECF No. 223. Now, in this Order, the Court will determine whether Insight

and Doe are entitled to injunctive relief based on the facts found to be undisputed in the MSJ Order, but will not resolve any factual issues on which there is a genuine dispute.

The City filed an Opposition to the Motion for Injunctive Relief on October 17, 2024. *See* ECF No. 215. The City also filed an Objection to Insight's Request for Judicial Notice (ECF No. 215-1) and an additional Declaration with its own evidence attached (ECF No. 215-2). Insight and Doe filed a Reply in support of the Motion for Injunctive Relief on October 24, 2024 (ECF No. 219), and an Objection to some of the evidence the City cited (ECF No. 220). Insight and Doe also filed a Notice of Errata as to the Motion for Injunctive Relief on October 24, 2024.

On January 31, 2025, the City filed the instant Ex Parte Application to modify the Court's scheduling order, seeking a modification that would allow a Motion for Reconsideration to be heard. *See* ECF No. 235. Insight and Doe oppose the Ex Parte Application. *See* ECF No. 236.

The Court held a hearing on the matters discussed in this Order on February 27, 2025.

**MOTION FOR INJUNCTIVE RELIEF (ECF NO. 210)**

### I.  Applicable Law

A permanent injunction may be entered where the plaintiff shows the following four elements are met:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of the hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 880 (9th Cir. 2014). Whether to grant a permanent injunction is "an act of equitable discretion by the district court," which requires a "fair weighing of the factors listed above, taking into account the unique circumstances of each case." *See id.* "It is important to consider the totality of circumstances bearing on whether a permanent injunction is appropriate equitable relief." *Id.*

A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an

injunction is in the public interest." *Id.* at 20 ("Winter Test"). Under the "serious question" approach adopted by the Ninth Circuit, a party may win an injunction by showing "that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor . . . so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

In determining whether to issue a preliminary injunction, the Court only examines whether the moving party has met the burden for the preliminary injunction sought. *See Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League,* 634 F.2d 1197, 1200 (9th Cir. 1980). Accordingly, the Court is not making a final decision on the merits of any claim, nor is it a decision on the merits of the factual assertions either party made in support of any claim. *See id.*

## II.     Discussion

The Court finds that Insight and Doe have not shown that they are entitled to the broad and permanent injunctive relief sought in their motion based on the undisputed facts. The Court will therefore not issue a permanent injunction as broad as what they seek. To be clear—this is not a definitive finding that Insight and Doe cannot win a permanent injunction of the breadth initially requested after trial and is instead only a finding that the facts previously found undisputed do not show that Insight and Doe are entitled to such an injunction at this time. The Court has broad powers to fashion appropriate equitable relief and given its grant of summary judgment to Insight and Doe, the Court will do so.

First, the Court finds that it is appropriate to presume irreparable harm under binding Ninth Circuit authority. The Ninth Circuit has explicitly held that "where a defendant has violated a civil rights statute, we will presume that the plaintiff has suffered irreparable injury from the fact of the defendant's violation." *See Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 827 (9th Cir. 2001). And there is good reason for this, as discussed in *Silver Sage*. Where a statute explicitly allows injunctive relief, a plaintiff need not necessarily make all typical showings for equitable relief in order to win an injunction to prohibit future violations, and the fact of discrimination necessarily causes injury. *See id.* Although the Defendants point to the Supreme

Court's discussion of injunctions in copyright and other areas as a basis to question whether *Silver Sage Partners* is still good law, this Court does not have the luxury of declining to follow clear precedent. In the Ninth Circuit, a decision of a prior three-judge panel is binding until overruled by the Supreme Court or a panel of the Ninth Circuit sitting en banc. *See Miller v. Gammie*, 335 F.3d 889, 893, 899–900 (9th Cir. 2003). To override Ninth Circuit precedent in light of later intervening higher authority, the "prior circuit authority [must be] clearly irreconcilable with the reasoning or theory of intervening higher authority." *See id.* at 893. Defendants do not attempt to show that *Silver Sage Partners* and the more recent Supreme Court case *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006) are clearly irreconcilable, and the Court finds that they are not, particularly given that *eBay*'s holding on the issue of when irreparable harm may be presumed can be read as limited to copyright cases. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392–93 (2006) ("this Court has consistently rejected invitations to replace traditional equitable considerations with a rule that an injunction automatically follows a determination that a copyright has been infringed."). The Court acknowledges that other district courts have found reason to question the continued viability of *Silver Sage Partners*,[1] but in the absence of a showing of clear irreconcilability or a Ninth Circuit decision explicitly overruling *Silver Sage Partners* via an en banc panel, this Court declines to question it.

      With respect to inadequate legal remedies, the undisputed facts already found establish that Insight's housing is unique and meets a critical need. *See* ECF No. 194 at 43 ("Insight's housing serves individuals who are too high-functioning to require 24-hour care, but need a safe and supportive place to adjust to community living . . . Without Insight's housing, its residents are significantly more likely to regress after leaving residential care and end up back in the hospital, or worse."). It flows from the rarity of this type of the facility and the important need it meets, that legal remedies alone will not compensate an individual for not being able to find needed housing

---

[1] *See, e.g., Arizona Recovery Hous. Ass'n v. Arizona Dep't of Health Servs.*, 462 F. Supp. 3d 990, 998 (D. Ariz. 2020) ("The Court need go no further than [eBay], however, to conclude that the plain language of the FHA's injunction-authorizing provision, 42 U.S.C. § 3613(c)(1), does not mandate a presumption of irreparable harm.").

within the County nor will it compensate Insight for its inability to plan and provide security and stability for its residents during the pendency of this litigation. Therefore, even if Insight has not shown that legal remedies would be inadequate to compensate it for monetary costs and disruption, it and Doe have shown that legal remedies would be inadequate to compensate for losing the unique and critical housing that Insight provides for its residents.

With respect to the balance of hardships, while this Court agrees that the determination of a permanent injunction requires the balancing of hardships that may be revealed in the trial of this matter, this Court finds that on the record currently before this Court, the balance of hardships tips in favor of Insight with respect to an injunction covering the pendency of this litigation that prohibits the City from taking action to shut Insight's facility down. Such an injunction would give Insight and Doe some temporary certainty and stability and cause little if any hardship to the City—which appears to largely be refraining from taking enforcement action in any event.

With respect to the broader relief sought, however, a much broader set of hardships need to be considered. And as discussed above and in the Court's previous Order, where there will be a bench trial on certain issues, it is not appropriate for the Court to make finding of fact as to equitable relief that will bind the jury.[2] The Court will allow facts to first be presented to the jury before making a final finding as to whether injunctive relief is appropriate and the scope of that relief.[3] *See*

---

[2] For this reason, the Court will not consider the additional facts submitted in the Request for Judicial Notice (ECF No. 211), which is DENIED AS MOOT. The Court need not reach the City's Objections to the Request for Judicial Notice (ECF No. 215-1) or Insight's Objections to evidence submitted by the City (ECF No. 220).

[3] Injunctive relief will be tried by the Court, not by a jury, and the Court will make the findings relevant to injunctive relief. But it is possible that the jury may make findings (in determining the issues tried by jury) that the Court finds relevant to whether injunctive relief is appropriate. The Court will avoid making further findings of fact at this time to avoid binding the jury to any finding as to disputed facts and to avoid the possibility of the jury making some contradictory finding of fact at trial.

At the hearing, Insight expressed concern that the City may seek to present to the jury information that is not relevant to any claim being decided via jury trial on the basis that it is potentially relevant to whether injunctive relief should be issued (particularly evidence of previously unidentified purported wrongdoing by Insight, which might be relevant to the balance of hardships or public interest). The Court's Order here should not be read as suggesting that the jury will be permitted to view evidence that is not relevant to the issues the jury needs to decide. The Court makes no ruling as to what evidence is relevant at this time, as this may be address via motions *in limine* or at trial. The Court further notes that to the extent that any party asserts that evidence should be excluded because it was not previously disclosed, this too may be addressed via motions *in limine* or at trial.

*Snider v. Consolidation Coal Co.*, 973 F.2d 555, 559 (7th Cir. 1992) (*citing Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 334 (1979)). The Court will then consider the broader equitable relief in the "totality of circumstances." *See La Quinta*, 762 F.3d at 880.

      Finally, with respect to the narrow relief of taking no enforcement action against Insight, the public interest clearly favors Insight and Doe, as set forth in their motion. This Court has found that the Defendants have violated a key civil rights law and the public interest is served by not permitting the Defendants to take further actions in violation of that law while the matter is finally determined. This is particularly true given the Defendants' request to further delay these proceedings so that a Motion for Reconsideration may be heard.

      Therefore, the Court finds that Insight and Doe have shown that a preliminary injunction prohibiting the Defendants from taking any enforcement actions against them during the pendency of this litigation is warranted. The Court will therefore grant that preliminary injunction.

      As discussed above, with respect to the broader, permanent injunction the plaintiffs seek, the Court finds it appropriate to consider all of the facts presented in the case (the "totality of circumstances") in order to determine whether the balance of hardships favors Insight and Doe and whether an injunction is in the public interest. *See La Quinta*, 762 F.3d at 880. The Court may issue a broader permanent injunction after trial but will not issue one at this time.

## EX PARTE APPLICATION (ECF NO. 235)

### I. Applicable Law

      A scheduling order may only be modified "for good cause." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) (*quoting* Fed. R. Civ. Pro. 16(b)). In determining whether good cause exists, the primary consideration is "the diligence of the party seeking the amendment." *Id.* "If that party was not diligent, the inquiry should end." *Id.* A district court may modify a scheduling order if the schedule "cannot reasonably be met despite the diligence of the party seeking the extension." *Id.* One secondary consideration is "the existence or degree of prejudice to the party opposing the modification." *Id.* But although prejudice "might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification." *Id.*

## II. Discussion

The Court finds that the City has been reasonably diligent, and further finds that it would not serve the ends of justice to deny the City the right to have its Motion for Reconsideration heard, and so will GRANT the Ex Parte Application.

The Ex Parte Application seeks a modification of the Court's scheduling order for one purpose—to allow the City's Motion for Reconsideration to be heard. *See* ECF No. 235. As background, the City filed a Motion for Reconsideration of the Court's MSJ Order on January 16, 2025, and the Court denied it as untimely. *See* ECF Nos. 233, 234.

The Motion for Reconsideration focuses on a recent Ninth Circuit case—*Ohio House, LLC v. City of Costa Mesa*, 122 F.4th 1097 (9th Cir. 2024). The City was also a party to *Ohio House*, and the City argues that the facts are similar and that *Ohio House* clarified the relevant in standard of review. In the MSJ Order, this Court explained as follows as part of its holding that Insight would prevail on the reasonable accommodation claim:

> Next, the City contends that Insight's requested accommodation was not "reasonable" because it would constitute a "fundamental alteration" of the ordinances. But the "fundamental alteration" test propounded by the City does not appear to be found in any authority that is binding on this Court. *See* [City's Motion] at 36–37 (citing only Eighth and Eleventh Circuit cases, as well as District of Maryland cases). The question in the Ninth Circuit is whether the accommodation is reasonable, or alternatively, whether it would work an undue hardship on the defendant.

ECF No. 194 at 3 (emphasis added).

In *Ohio House*, decided after this Court issued its Order, the Ninth Circuit stated the following:

> Municipalities are not required "to make 'fundamental' or 'substantial' modifications to accommodate the handicapped ...." [Citations]. They are required only to make reasonable accommodations. *Id.* "[A]n accommodation is reasonable ... 'when it imposes no "fundamental alteration in the nature of the program" or "undue financial or administrative burdens." ' " [Citations].

*Ohio House*, 122 F.4th at 1134. The Ninth Circuit went on to favorably cite precedent from other Circuits and adopt portions of those Circuits' reasoning. *See id.*

At the time that *Ohio House* was decided, on December 4, 2024, this action was stayed pursuant to a Court Order pending mediation. *See* ECF No. 223. After the mediation on December

19, 2024, was unsuccessful, the City filed, on December 26, 2024, an Ex Parte Application to Continue the hearing date on the Motion for Injunctive Relief (then set for January 23, 2025, *see* ECF No. 226). *See* ECF No. 228. This Ex Parte Application made clear that the City intended to file a Motion for Reconsideration based on *Ohio House*. *See id.* The City requested that the hearing on the Motion for Injunctive Relief be continued to allow the Motion for Reconsideration to be briefed and decided. *See id.* On January 13, 2025, the Court continued the hearing on the Motion for Injunctive Relief on the Court's own Motion, and denied the Ex Parte Application at ECF No. 228 as moot. *See* ECF No. 232.

On January 16, 2025, The City filed a Motion for Reconsideration of the Court's MSJ Order. *See* ECF No. 233. On January 30, 2025, the Court denied the Motion for Reconsideration, on the basis that per the Court's scheduling Order, the last day to hear motions was November 14, 2024, which had passed. *See* ECF No. 234. After the Court denied the Motion for Reconsideration as untimely on January 30, 2025, the City filed the instant Ex Parte application on January 31, 2025. *See* ECF No. 235.

This course of action shows reasonable diligence. The City promptly informed the Court of its intention to file a Motion for Reconsideration after the stay was lifted, and has acted reasonably quickly at each step to pursue this. Although the City could perhaps have been more diligent (e.g., by filing a motion to amend the scheduling order in December of 2024, as it admits it should have and admits it intended to (*see* ECF No. 235 at 4)), but this does not show a complete lack of diligence in context.

Furthermore, in the interests of justice, the Court will allow the Motion for Reconsideration to be heard. Given the clarification the Ninth Circuit has provided, it will be useful to the Court and the parties for the Court to consider whether the Court's MSJ Order should be changed. This should not be read as any indication as to how the Court will rule. But the Court will consider the Motion. Insight has not shown that the Court should not amend the scheduling order and do so. And to the extent that the additional delay may work a hardship to Insight in final resolution of this case, that concern has been addressed by the Court's issuance of a preliminary injunction as discussed above.

Thus, the Ex Parte Application (ECF No. 235) is GRANTED.

**CONCLUSION**

For the reasons stated herein, the Court ORDERS as follows:

1. The Motion for Injunctive Relief (ECF No. 210) is GRANTED IN PART.

2. The Court issues a preliminary injunction as follows:

    a. Unless the Court orders otherwise, the City must allow Insight to continue to provide shared housing for people with disabilities in its current location as a reasonable accommodation. The City is prohibited from requiring Insight to obtain any further City approvals for providing the same type of housing at its current location, including but not limited to any conditional use permits, special use permits, or operator's permits.

    b. The City may regulate Insight's housing in the same manner as other multifamily housing and may enforce provisions of the City's Municipal Code and Zoning Code against Insight to the extent that they are applicable. For instance, the City may enforce any municipal noise ordinance against Insight to the extent that occupants of Insight's housing violate the City's noise ordinance, and the City may enforce any municipal nuisance ordinance to the extent that Insight's housing becomes a nuisance. However, the City cannot refuse to permit Insight to have the type of housing it provides in its current location, and cannot institute code enforcement or nuisance abatement proceedings solely on the basis that Insight is a "group home" or that Insight's housing does not have a conditional use permit or operator's permit.

3. The Ex Parte Application (ECF No. 235) is GRANTED.

    a. The Court will hear the Motion for Reconsideration (ECF No. 233) despite its untimeliness. The City need not refile the Motion. Insight may file an opposition to the Motion for Reconsideration at ECF No. 233 within fourteen (14) days of this Order. The City may file a Reply within fourteen (14) days of Insight filing its Opposition. The Court will then set a hearing date if necessary.

      b. The scheduling order will otherwise remain unchanged.

IT IS SO ORDERED.

Dated: March 4, 2025

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge