1    Mary Helen Beatificato, Esq. (State Bar No. 220936)
     Insight Psychology and Addiction, Inc.
2    4000 Birch Street, Suite 112
     Newport Beach, CA 92660
3    Telephone:   (949) 216-3851
     Facsimile:   (949) 467-9945
4
     Alisha Patterson (State Bar No. 274630)
5    apatterson@rutan.com
     RUTAN & TUCKER, LLP
6    18575 Jamboree Road, 9th Floor
     Irvine, CA 92612
7    Telephone:   714-641-5100
     Facsimile:   714-546-9035
8
     Attorneys for Plaintiff and Counter-Defendant
9    INSIGHT PSYCHOLOGY AND ADDICTION,
     INC. and Counter-Defendants MARY HELEN
10   BEATIFICATO and GERALD GROSSO

11   [Additional Attorneys Listed on Next Page]

12                  UNITED STATES DISTRICT COURT

13        CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

14   INSIGHT PSYCHOLOGY AND              Case No. 8:20−cv−00504−MEMF−JDE
     ADDICTION, INC., a California
15   corporation, and JANE DOE, an       Judge:   Honorable Maame Ewusi-Mensah
     individual,                         Frimpong
16                                       Ctrm:    8B
                  Plaintiffs,
17                                       **PLAINTIFFS' JOINT OPPOSITION
           vs.                           TO    CITY'S    MOTION    FOR
18                                       RECONSIDERATION OF PARTIAL
     CITY OF COSTA MESA, a municipal     SUMMARY JUDGMENT**
19   corporation; and DOES 1-10, inclusive,
                                         [Filed concurrently with Declarations of
20                Defendants.            Mary Helen Beatificato, Alisha Patterson,
                                         and Autumn Elliott in Support of Joint
21                                       Opposition]
     CITY OF COSTA MESA, a municipal
22   corporation,                        Hearing: To be set by Court, if necessary

23                Counter-Plaintiff,     Date Action Filed:  March 12, 2020
                                         Trial Date:         October 27, 2025
24         vs.

25   INSIGHT PSYCHOLOGY AND
     ADDICTION, INC., a California
26   corporation; MARY HELEN
     BEATIFICATO, an individual;
27   GERALD GROSSO, an individual; and
     ROES 1-50,
28
                  Counter-Defendants.

## ADDITIONAL ATTORNEYS

Andrea Rodriguez (State Bar No. 290169)
Zeenat Hassan (State Bar No. 294138)
DISABILITY RIGHTS CALIFORNIA
530 B Street, Suite 400
San Diego, CA 92101
Tel.: (619) 814-8503
Fax: (619) 239-7906
Andrea.Rodriguez@disabilityrightsca.org
Zeenat.Hassan@disabilityrightsca.org

Autumn M. Elliott (State Bar No. 230043)
LAW OFFICE OF AUTUMN ELLIOTT
325 N. Larchmont Blvd., Ste. 307
Los Angeles, CA 90004
Tel: (213) 500-9494
autumn@elliottimpact.com

Christopher Brancart (State Bar No. 128475)
BRANCART & BRANCART
P. O. Box 686
Pescadero, CA 94060
Tel.: (650) 879-0141
Fax: (650) 879-1103
cbrancart@brancart.com

Attorneys for PLAINTIFF JANE DOE

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................1

II. ARGUMENT ......................................................................................2

    A. *Ohio House* is Not a "Material Change" In "Fundamental Alteration Law"...................................................................................2

        1. *Ohio House* Did Not Close a Gap in Fundamental Alteration Law ........................................................................2

        2. *Ohio House* Mandates Individualized Analysis for Reasonable Accommodation Claims.......................................4

        3. *Ohio House* Favorably Cites Other Circuit Decisions that Reinforce this Court's Reasonable Accommodation Ruling.................................................................4

            a. *Schwarz v. City of Treasure Island*, 544 F.3d 1201 (11th Cir. 2008) ...............................................5

            b. *Anderson v. City of Blue Ash*, 798 F.3d 338 (6th Cir. 2015) .....................................................8

    B. *Ohio House* Did Not Uphold the Validity of the City's Group Home Regulations in All Circumstances................................10

        1. *Res Judicata* and Issue Preclusion Are Inapplicable Here............................................................................10

        2. *Ohio House* Did Not Rule That All Requests to Relax the City's Separation Requirement Are Fundamental Alterations...........................................10

        3. *Ohio House* Does Not Allow the City to Treat All Group Homes That Request Accommodations As If They Are Interchangeable...................................11

    C. This Case Is Materially Distinct From *Ohio House* ...............12

        1. Different City Admissions.............................................12

        2. Different Plaintiffs, Housing, and Neighborhoods..................13

        3. Different Evidence......................................................14

        4. Different Factual Findings..........................................14

    D. The Motion Does Not Identify Any Statements in this Court's March 2024 Ruling That Are Inconsistent with *Ohio House*.......................................................................................15

|  |  |  | **Page** |
|---|---|---|---|
| | E. | The Motion Does Not Identify Any Material Facts the Court Failed to Consider | 16 |
| | | 1. The Court Considered the City's Group Home Regulations for the R2 Zone | 17 |
| | | 2. The Court Considered Ms. Le's Declaration and the Recitals to the Group Home Ordinances | 17 |
| | F. | The City Has Not Provided Any Viable Local Rule 7-18 Basis for Reconsideration | 19 |
| | G. | The City Failed to Adequately "Meet and Confer" Under Local Rule 7-3 | 20 |
| | H. | This Motion is Part of a Broader Strategy to Avoid the Repercussions of the Court's March 2024 Ruling | 22 |
| | I. | Even if the City's Motion is Granted, *Ohio House* Does not Change the Result of this Court's Summary Judgement Order | 24 |
| III. | | CONCLUSION | 25 |

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

3

**FEDERAL CASES**

4

*Anderson v. City of Blue Ash*,

5

    798 F.3d 338 (6th Cir. 2015) ........................................................................5, 8, 9

6

*Bacon v. Artificial Grass Liquidators Location 1, Inc.*,

7

    No. 818CV01220JLSADS, 2019 WL 7841078 (C.D. Cal. Nov. 8, 2019) ........22

8

*Community House, Inc. v. City of Boise*,

9

    490 F.3d 1041 (9th Cir. 2007) ...........................................................................16

10

*Giebeler v. M & B Associates*,

    343 F.3d 1143 (9th Cir. 2003) ...................................................................2, 3, 12

11

12

*Graybill v. Nat'l Sec. Agency*,

    No. 2:23-CV-08754-MEMF-JC, 2025 WL 35983 (C.D. Cal. Jan. 3, 2025)

13

    (Frimpong, J.) .....................................................................................................22

14

*In re Russell*,

15

    76 F.3d 242 (9th Cir. 1996) ...............................................................................10

16

*Ohio House, LLC v. City of Costa Mesa*,

    122 F.4th 1097 (9th Cir. 2024)

17

    .............. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 19, 20, 21, 23, 24, 25

18

*Schwarz v. City of Treasure Island*,

19

    544 F.3d 1201 (11th Cir. 2008).........................................................5, 6, 7, 8, 11

20

*Sovany Beverage Co., LLC*, 222CV00638MEMFJPRX, 2022 WL 21828627, at *3,

21

    n.3 (C.D. Cal. Aug. 15, 2022) ...........................................................................20

22

*Trulis v. Barton*,

23

    107 F.3d 685 (9th Cir.1995) ..............................................................................10

24

**FEDERAL RULES**

25

Federal Rules of Civil Procedure

26

    rule 54(b) ..............................................................................................................1

27

28

2499/035905-0001
21890576.3 a03/18/25

-iii-

Case No. 8:20-cv-00504 MEMF−JDE
PLAINTIFFS' JOINT OPPOSITION TO
CITY'S MOTION FOR RECONSIDERATION

**Page(s)**

**LOCAL RULES**

California Central District Rules
rule 7-18 ............................................................................................... 1, 2, 16, 19
rule 7-3 .......................................................................................... 2, 15, 17, 20, 22
rules 7-3 through 7-8 ....................................................................................... 22

**NON-PERIODICAL PUBLICATIONS**

Justice, *Reasonable Accommodations Under the Fair Housing Act* (May 17, 2004),
available at https://www.hud.gov/sites/documents/huddojstatement.pdf (last
visited Jan. 29, 2025) ....................................................................................... 24

**OTHER AUTHORITIES**

Costa Mesa Municipal Codes
sections 13-322(c), 13-311(a)(15), 9-374(c) ....................................................... 9

## I.    **INTRODUCTION**

Defendant and Counter-Plaintiff City of Costa Mesa ("City")'s Motion for Reconsideration[1] (the "Motion") exemplifies the same fundamental flaws that led to the denial of its Motion for Summary Judgment and the granting of Plaintiffs'[2] Motion for Partial Summary Judgment. The Motion continues the City's deliberate and misguided effort to conflate this case with *Ohio House, LLC v. City of Costa Mesa* ("*Ohio House*"),[3] ignoring the critical factual, legal, and procedural distinctions between the two cases. In doing so, the City attempts to import arguments wholesale from its litigation in *Ohio House* without applying them to the specific circumstances, claims, and evidentiary record of this case. The City also erroneously characterizes the Ninth Circuit's recent opinion in *Ohio House* as "new law," even though the opinion reaffirms existing law regarding the case-by-case nature of reasonable accommodation analysis.

The City's Motion fails to satisfy the stringent standard for reconsideration under Federal Rule of Civil Procedure 54(b) and Local Rule 7-18. It does not present any new material facts, changes in controlling law, or clear errors in this Court's March 20, 2024 Order, Electronic Case Files ("ECF") 194 ("Summary Judgment Order"). Instead, the City rehashes previously rejected arguments and relies on generalized conclusions drawn from the Ninth Circuit's decision in *Ohio House* to avoid grappling with this Court's fact-specific findings, which firmly establish Plaintiffs' entitlement to a reasonable accommodation. The Motion should be denied.

---

[1]    The Court's March 4, 2025 Order agreed to hear the City's Motion, despite its untimeliness. ECF 240, 11:22-23.

[2]    Plaintiffs are Counter-Defendant Insight Psychology and Addiction, Inc. ("Insight") and Plaintiff Jane Doe ("Ms. Doe").

[3]    *Ohio House* is United States District Court for the Central District of California Case No. 8:19-cv-01710-JVS-GJS and United States Court of Appeal for the Ninth Circuit Case No. 22-56181. The Ninth Circuit's decision in Ohio House that prompted the City's Motion for Reconsideration is *Ohio House, LLC v. City of Costa Mesa*, 122 F.4th 1097 (9th Cir. 2024). On January 8, 2025, the appellant in *Ohio House* filed a petition for rehearing en banc. The City filed its response to the petition on February 18, 2025. As of the date this opposition was filed, Ohio House's petition for rehearing en banc was still pending.

## II.    **ARGUMENT**

The City's Motion mischaracterizes this Court's Summary Judgment Order and *Ohio House*, ignores material distinctions between the two cases, and ultimately fails to identify any valid basis under Local Rule 7-18 to reconsider this Court's prior ruling. The motion also raises several issues the City did not discuss in the mandatory pre-filing conference under Local Rule 7-3.

### A.    ***Ohio House* is Not a "Material Change" In "Fundamental Alteration Law"**

The City's argument that there has been a "material change in the law" under Local Rule 7-18(c) rests on at least three faulty premises: (1) that this Court's Summary Judgment Order determined the fundamental alteration defense is not available in the Ninth Circuit; (2) that *Ohio House* represents a material change in "fundamental alteration law"; and (3) that this purported change somehow retroactively cures the dearth of evidence of a fundamental alteration. Each premise is demonstrably false.

#### 1.    ***Ohio House* Did Not Close a Gap in Fundamental Alteration Law**

The City erroneously claims this Court's reasonable accommodation ruling in this case was based on the fundamental alteration defense "not applying" in the Ninth Circuit when this Court entered its Summary Judgment Order. ECF 233, pp. 10-13 of 28 (Motion, § III). The City characterizes this as a "gap" in fundamental alteration law. ECF 233, p. 20 of 28 (line 10). *Ohio House* did not close a "gap" in the Ninth Circuit's fundamental alteration law because no such "gap" ever existed.

More than two decades ago, the Ninth Circuit recognized the existence of a fundamental alteration defense in *Giebeler v. M & B Associates*—"Ordinarily, an accommodation is reasonable under the FHAA 'when it imposes no "fundamental alteration in the nature of the program" or "undue financial or administrative burdens." ' " 343 F.3d 1143, 1157 (9th Cir. 2003), quoting *Howard v. City of*

*Beavercreek*, 276 F.3d 802, 806 (6th Cir. 2002). In *Giebeler*, the Ninth Circuit articulated the standard for establishing this defense as follows:

> … a plaintiff requesting accommodation bears the "initial burden of producing evidence that a reasonable accommodation was possible." *Vinson*, 288 F.3d at 1154. Once evidence of the possibility is produced, the burden shifts to the other party to produce rebuttal evidence that the requested accommodation is not reasonable. *Id.*

343 F.3d at 1156, quoting *Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002).

This is the same standard and the same binding authority this Court relied on in its March 20, 2024 Summary Judgment Order. *See* ECF 194, 32:10-18, *quoting Giebeler*, at 1156; *see also* ECF 194, 42:22–44:2 (applying *Giebeler*'s standard to the facts of this case). This is also the same standard and the same binding authority the Ninth Circuit relied on in *Ohio House*:

> Municipalities are not required "to make 'fundamental' or 'substantial' modifications to accommodate the handicapped ...." *Sanghvi v. City of Claremont*, 328 F.3d 532, 538 (9th Cir. 2003) (*quoting City of Edmonds*, 18 F.3d at 806). They are required only to make reasonable accommodations. *Id.* "[A]n accommodation is reasonable ... 'when it imposes no "fundamental alteration in the nature of the program" or "undue financial or administrative burdens." ' " *Giebeler*, 343 F.3d at 1157 (*quoting Howard v. City of Beavercreek*, 276 F.3d 802, 806 (6th Cir. 2002)).

122 F.4th at 1134 (9th Cir. 2024).

This Court's March 4, 2025 Order identified the passages in its Summary Judgement Order and the Ninth Circuit's *Ohio House* decision that outline this

standard. ECF 240, 9:12-25. The Ninth Circuit has consistently relied on and continues to rely on this long-established standard.

### 2. *Ohio House* Mandates Individualized Analysis for Reasonable Accommodation Claims

The City's claim that *Ohio House* created a "direct and unequivocal change in law" (ECF 233, p. 14 of 28, lines 14-17) is demonstrably false and unsupported by the decision itself. *Ohio House* reaffirms the core principle that reasonable accommodation claims and their fundamental alteration defenses require individualized factual analysis. *Ohio House* confirms that reasonable accommodation analysis is "'*highly fact-specific*'" and requires "'*case-by-case determination*.'" 122 F.4th at 1133, *quoting United States v. Cal. Mobile Home Park Mgmt. Co.*, 107 F.3d 1374, 1380 (9th Cir. 1997) (emphasis added); *see also id.*, at 1134, *quoting Oconomowoc Residential Programs v. City of Milwaukee*, 300 F.3d 775, 784 (7th Cir. 2002) (determining whether an accommodation is reasonable versus a fundamental alternation "'requires balancing the needs of the parties'" ). Here, the Court engaged in this "highly fact-specific" and "case-by-case" analysis. Based on a record that was many thousands of pages long,[4] this Court determined that "Insight presented evidence that the requested accommodation was possible and reasonable on its face" while "[t]he City has not pointed to any evidence demonstrating that the accommodation was not reasonable…" ECF 194, 34:6-10.

### 3. *Ohio House* Favorably Cites Other Circuit Decisions that Reinforce this Court's Reasonable Accommodation Ruling

This Court's Summary Judgment Order declined to follow certain "Eighth and Eleventh Circuit cases, as well as District of Maryland cases" the City provided because they are not "binding on this Court." ECF 194, 34:2-5. The Ninth Circuit's

---

[4]   For example, Plaintiffs provided nearly 2,000 pages of evidence in support of their motion for summary judgment and opposition to the City's motion for summary judgment. *See* ECF 157 (1,994 pages); *see also* ECF 147 (1,644 pages) and ECF 164 (369 pages).

*Ohio House* decision discussed cases from two other Circuits—*Schwarz v. City of Treasure Island*, 544 F.3d 1201 (11th Cir. 2008) and *Anderson v. City of Blue Ash*, 798 F.3d 338 (6th Cir. 2015). *Ohio House*, 122 F.4th at 1134-1135. Those opinions confirm this Court's reasonable accommodation ruling was correct.

### a.   *Schwarz v. City of Treasure Island*, 544 F.3d 1201 (11th Cir. 2008)

In *Schwarz*, a popular tourist destination adopted an "occupancy-turnover rule" that prohibited vacation rentals (which the zoning ordinance called "tourist dwellings") in single-family homes in certain residential zones. 544 F.3d at 1205-1206. The purpose of this rule was to "create pockets of stable, single-family neighborhoods" for long-term residents in a small coastal community that drew "vacationers and snowbirds by the thousands." 544 F.3d at 1205, 1222. The "occupancy-turnover rule" also had the consequence of prohibiting "six halfway houses for recovering substance abusers" because, as transitional housing, their occupancy typically changed more frequently than the rule allowed.[5] *Id.*, at 1205. Two of those halfway houses were in a zone that only allowed single-family dwellings—RU-75. *Id.*, at 1206. The "occupancy-turnover rule," therefore, applied to every dwelling in the RU-75 zone. *Id.* The other four halfway houses were in a zone that allowed both single- and multi-family dwellings—RM-15. *Id.* There, the "occupancy-turnover rule" only applied to the single-family dwellings, and the multi-family dwellings in the RM-15 zone were not subject to the "occupancy-turnover rule" and could be used as "tourist dwellings." *Id.* All six halfway houses were in single-family homes, so the "occupancy-turnover rule" prohibited them, regardless of whether they were in the RU-75 or RM-15 zone. *Id.*

The housing provider requested the City to relax the "occupancy-turnover rule" to allow all six of its halfway houses. *Id.*, at 1218. The City of Treasure Island denied

---

[5]   This rule prohibited changes in occupancy more than two times in any one year. 544 F.3d at 1222.

that request. *Id.*, at 1219. In the litigation that ensued, the City asserted a "fundamental alteration" defense, and the District Court entered summary judgment for the City. *Id.*, at 1211. An appeal followed. For the two halfway houses in the RU-75 zone (where the City did not allow any "tourist dwellings" at all), the Eleventh Circuit affirmed the order granting partial summary judgment for the City. *Id.*, at 1223. However, for the four halfway houses in the RM-15 zone (where the City allowed "tourist dwellings" in multi-family homes but prohibited them in single-family homes), the Eleventh Circuit reversed the order granting partial summary judgment for the City and, instead, ***directed the District Court to enter partial summary judgment to the housing provider*** determining its accommodation request was "reasonable" and, therefore, was not a "fundamental alteration." *Id.*, at 1225.

The Eleventh Circuit explained that "[w]hether a particular rule is 'essential' to a zoning scheme will, of course, turn on the facts of each case" but the Eleventh Circuit outlined "a few general principles" that "guide us." *Id.*, at 1221. In *Ohio House*, the Ninth Circuit quoted these "general principles" with approval:

> … The basic purpose of zoning is to bring complementary land uses together, while separating incompatible ones. *See Vill. of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 388 [, 47 S.Ct. 114, 71 L.Ed. 303] (1926) ("A nuisance may be merely a right thing in the wrong place, like a pig in the parlor instead of the barnyard."). Thus, ordering a municipality to waive a zoning rule ordinarily would cause a "fundamental alteration" of its zoning scheme if the proposed use was incompatible with surrounding land uses. *See Bryant Woods Inn, Inc. v. Howard Cnty.*, 124 F.3d 597, 604 (4th Cir. 1997) ("In determining whether the reasonableness requirement has been met, a court may consider … the extent to which the accommodation would undermine the legitimate purposes and effects of existing zoning

> regulations …."). On the other hand, if the proposed use is quite similar to surrounding uses expressly permitted by the zoning code, it will be more difficult to show that a waiver of the rule would cause a "fundamental alteration" of the zoning scheme. Similarly, if the municipality routinely waives the rule upon request, it will be harder to show that the rule is "essential."

*Ohio House*, 122 F.4th at 1134, *quoting Schwarz*, 544 F.3d at 1221.

For the two homes in the RU-75 zone (where the City did not allow any "tourist dwellings" at all), the Eleventh Circuit had "little trouble concluding that limited turnover is an essential aspect of the RU–75 zones" and "there can be no doubt that [the housing provider]'s two halfway houses in RU–75 zones undermine that low-turnover policy." *Schwarz*, 544 F.3d at 1223. But for the four homes in the RM-15 zone (where the City allowed "tourist dwellings" in multi-family homes and only prohibited them in single-family homes), the Eleventh Circuit could "not see how [low turnover] can be 'essential' since numerous dwellings in those zones are not subject to the same occupancy-turnover limits." *Id.*, at 1224. In the RM-15 zone, "two dwellings across the street from each other could have the same turnover rate, yet one would be lawful and the other unlawful simply because one dwelling is a single-family house and the other is a unit in a condominium complex." *Id.*

The same is true here. Like the City of Treasure Island with respect to the four halfway homes in its RM-15 zone, the City of Costa Mesa cannot establish that its separation requirement is "essential" to its zoning scheme. The City of Costa Mesa readily admits it "would have accepted the separation waiver under a different sequence of events." ECF 194, 34:6-9. The City has not provided any evidence that Insight's shared housing is incompatible with surrounding land uses. Insight's housing is "quite similar" to the housing that surrounds it—Insight's housing is multifamily housing (a six unit apartment complex) surrounded by other multifamily housing (other apartment complexes of a similar size). ECF 194, 15:22-23. If Insight

Case No. 8:20-cv-00504 MEMF–JDE
PLAINTIFFS' JOINT OPPOSITION TO
CITY'S MOTION FOR RECONSIDERATION

were to stop providing its shared housing, its six apartment units would be subject to the City's permissive regulations for multifamily housing in the Medium Density Residential (R2-MD) zone. ECF 194, 15:20-22. The same six units could be rented by the same number of people (or more), parking the same number of vehicles (or more), with the same turnover rates (or higher). ECF 147-64, pp. 1507-1508. *Schwarz* reinforces this Court's ruling entering partial summary judgment for Plaintiffs on their reasonable accommodation claims.

> **b.** ***Anderson v. City of Blue Ash*, 798 F.3d 338 (6th Cir. 2015)**

In *Anderson*, a dispute arose over whether the family of a child with mobility and balance disabilities could keep a miniature horse at their home so their child could get the exercise and therapy she needed in their backyard. 798 F.3d at 346. Approximately three years after the family acquired their therapy horse, the City of Blue Ash passed an ordinance banning horses on residential property. *Id.* The family asked the City for permission to keep their horse as a reasonable accommodation, and the City denied the request, in part, because "permitting the horse to remain at Anderson's house would fundamentally alter the nature of its zoning scheme." *Id.*, at 363. The District Court entered summary judgment for the City, but the Sixth Circuit reversed. *Id.* In doing so, the Sixth Circuit explained "***we have long since rejected the notion that making an exception to a zoning scheme to permit something that would normally be forbidden automatically amounts to a fundamental alteration***." *Id.*, citing *Smith & Lee Assocs., Inc. v. City of Taylor, Mich.*, 102 F.3d 781, 796 (6th Cir. 1996) (emphasis added). Rather, "***[r]equiring public entities to make exceptions to their rules and zoning policies is exactly what the FHAA does***." *Id.* (emphasis added).

In *Ohio House*, the Ninth Circuit cited these legal principles with approval, but distinguished the cases because: (1) *Anderson* was reviewing a summary judgment ruling while *Ohio House* was "reviewing a jury verdict"; and (2) *Anderson* involved

a "one-off request … for an exception to an animal restriction," whereas the Ninth Circuit framed Ohio House's claim as a challenge to the City's denial of permits for over 20 *existing* group homes located in residential zones." 122 F.4th at 1135 (italics in original). The Ninth Circuit found that the difference in scope between the two reasonable accommodation requests (one miniature horse at one property vs. permits for twenty different groups homes) was significant enough that the jury "reasonably could have found that the separation requirement is fundamental to the City's zoning policy governing residential areas." *Id.*

Here, Plaintiffs' reasonable accommodation request is not broad in scope. It is exactly like the narrow request at issue in *Anderson*—a "one-off" request for an exception to a newly-created zoning restriction for one residential property. As noted above, Anderson "rejected the notion that making an exception to a zoning scheme to permit something that would normally be forbidden automatically amounts to a fundamental alteration." 798 F.3d at 363. As in *Anderson*, the City of Costa Mesa had an opportunity to present evidence that granting this request would amount to a fundamental alteration of the City's zoning scheme. Instead of doing so, the City relied solely on "the idea that it cannot waive the separation requirement—as doing so would undermine its argument that the separation [requirement] is fundamental." ECF 194, 43:23-25. Yet the City's group home regulations explicitly contradict this assertion. Indeed, the very regulation establishing this allegedly "fundamental" separation requirement also expressly invites applicants to seek "relief from strict application" of that very same requirement. CMMC §§ 13-322(c), 13-311(a)(15), 9-374(c). Although *Ohio House* distinguished *Anderson* on procedural and factual grounds, the reasoning in *Ohio House* confirmed this Court's Summary Judgment Order is correct that the City's tautological reasoning is not sufficient to establish a fundamental alteration defense. 122 F.4th at 1135.

/ / /

/ / /

**B.      _Ohio House_ Did Not Uphold the Validity of the City's Group Home Regulations in All Circumstances**

The City's Motion erroneously claims _Ohio House_ is an opinion "completely upholding the validity of the City's Group Home Regulations." ECF 233, p. 7 of 28 (lines 10-14). _Ohio House_ made no such determination. In _Ohio House_, the City's regulations survived a facial challenge because Ohio House did not establish that "no set of circumstances exists under which the [law] would be valid." 122 F.4th at 1129 (internal citations omitted).

**1.      _Res Judicata_ and Issue Preclusion Are Inapplicable Here**

Relying on two gross commonalities in this case and _Ohio House_ (i.e., they involve the same City and the same group home regulations), the City's motion effectively seeks to invoke principles of _res judicata_ or issue preclusion without acknowledging that these doctrines are inapplicable here. As the Ninth Circuit has long held, _res judicata_ applies only when the parties are identical in both cases. _Trulis v. Barton_, 107 F.3d 685, 691 (9th Cir.1995). Issue preclusion similarly requires privity between parties, which is entirely absent here. _In re Russell_, 76 F.3d 242, 244–45 (9th Cir. 1996). Moreover, such doctrines cannot override the FHA's requirement for a "highly fact-specific" inquiry into reasonable accommodation claims. _Ohio House_, 122 F.4th at 1133-1134.

**2.      _Ohio House_ Did Not Rule That All Requests to Relax the City's Separation Requirement Are Fundamental Alterations**

The crux of the City's Motion for Reconsideration is that, because _Ohio House_ upheld one jury's determination that it would be a fundamental alteration to approve a particular sober living home's request for an exception to the separation requirement in the City's group home regulations, the same outcome should now apply universally to all requests for an exception to the separation requirement, including Plaintiffs' request. This argument is fundamentally flawed and misrepresents both _Ohio House_ and the legal standards governing reasonable accommodation claims. **_Ohio House_**

1    ***does not create a blanket rule that all requests for an exception to the separation***
2    ***requirement can be denied as a fundamental alteration.*** As noted above, *Ohio House*
3    emphasizes that reasonable accommodation claims and their defenses are inherently
4    fact-specific and require careful consideration of the unique circumstances presented
5    in each case. 122 F.4th at 1133, *citing Schwartz*, 544 F.3d at 1220 n.12. Adopting the
6    City's approach would erase the fact-specific inquiry mandated by the FHA, the
7    ADA, and related laws, replacing it with an impermissible one-size-fits-all
8    framework. *Ohio House* did not work such an erasure, nor (as the decision of a three-
9    judge panel of the Ninth Circuit) could it make such a radical change to decades-old
10   reasonable accommodation law.

11              **3.      *Ohio House* Does Not Allow the City to Treat All Group**
12                       **Homes That Request Accommodations As If They Are**
13                       **Interchangeable**

14              As discussed in more detail in Section II.C below, the Plaintiffs in this case and
15   the plaintiffs in *Ohio House* presented entirely different factual records. Despite *Ohio*
16   *House*'s clear language requiring individualized analysis of each reasonable
17   accommodation request (122 F.4th at 1133), the City urges the Court to ignore the
18   material factual distinctions between *Ohio House* and this case. The City still contends
19   it does not "make any logical sense" to evaluate "what type of disabled person resides
20   in the group home" when the City processes these reasonable accommodation
21   requests (ECF 233, pp. 20-21 of 28), another bald assertion directly contradicted by
22   the City's own regulations, which explicitly impose different restrictions on group
23   homes based solely on the type of disability of a home's residents (i.e., recovering
24   from addiction versus other disabilities). See e.g., CMMC 13-6, 13-311(a)(14), 9-
25   374(b)(11). *Ohio House* plainly requires the opposite. Quoting *Oconomowoc*
26   *Residential Programs v. City of Milwaukee*, 300 F.3d 775, 784 (7th Cir. 2002), *Ohio*
27   *House* underscores that "[w]hether a requested accommodation is reasonable or not
28   ... requires balancing the needs of the parties." 122 F.4th at 1134. The Court cannot

1    "balance[e] the needs of the parties" if it disregards Plaintiffs' disability-related needs.

2    Even before *Ohio House*, the Ninth Circuit was clear that "case-specific

3    circumstances may make it reasonable for certain defendants to make

4    accommodations even where such accommodations are not reasonable in most cases."

5    *Giebeler*, 343 F.3d at 1156. Again, *Ohio House* recognizes that "[w]hether a particular

6    rule is 'essential' to a zoning scheme [such that, waiving it results in a fundamental

7    alteration] will, of course, ***turn on the facts of each case***...." 122 F.4th at 1134,

8    *quoting Schwarz*, 544 F.3d at 1221 (emphasis added). The undisputed facts of this

9    case established it was reasonable (and not a fundamental alteration) to grant

10   Plaintiffs' request. Given that the City would have allowed an exception to the

11   separation requirement under a slightly different sequence of events, no jury could

12   find otherwise. This is so even if a jury found it would not have been reasonable (or

13   would have been a fundamental alteration) to grant *Ohio House*'s request. By

14   continuing to conflate these two cases, the City has failed to engage with the factual

15   and legal nuances that distinguish them. This Court recognized these differences and

16   appropriately ruled in favor of Plaintiffs on their reasonable accommodation claim.

17       **C.**    **This Case Is Materially Distinct From *Ohio House***

18       From the time Insight submitted its application for a reasonable

19   accommodation (in August of 2018) to present, the City has violated fair housing laws

20   by treating Insight's request as if it is exactly the same as other group homes' requests

21   for reasonable accommodations. As a case in point, the City's Motion acknowledges

22   that it offered the "exact same evidence" in both this case and *Ohio House*. ECF 233,

23   p. 12 of 28. The City may have offered the "same evidence" in both cases, but the

24   plaintiffs did not. The evidence this Court relied on in its reasonable accommodation

25   ruling was different and unique to this case.

26       **1.**    **Different City Admissions**

27       First, in this case, the City admitted that, under a slightly "different sequence

28   of events," it would have "accepted the separation waiver" requested by Plaintiffs and

allowed Plaintiffs' housing to continue without the need for any exception to the City's group home regulations. ECF 194, 34:7-8. The licensed drug and alcohol treatment facilities that created the separation conflict for Insight's housing were located outside of City limits, so the City's group home regulations do not apply to them. *Id.* at 18:12-15. The City admitted it would have allowed Insight to be located less than 650 feet from those non-City facilities if the non-City facilities had come into existence (or if the City had discovered them) ***after*** the City approved a conditional use permit for Insight's housing. *Id.* This admission was fatal to the City's fundamental alteration defense. This Court correctly determined that housing that fully complies with the City's group home regulations under one sequence of events cannot be a "fundamental alteration" of the same regulations under a slightly different sequence of events. These factors were not present in the *Ohio House* case, and nothing in the Ninth Circuit's *Ohio House* opinion requires this Court to change its analysis of these facts.

### 2.    Different Plaintiffs, Housing, and Neighborhoods

In *Ohio House*, the jury's findings were based on evidence specific to a sober living home, a type of group housing serving individuals recovering from substance use disorders. *Ohio House*, 122 F.4th 1112. Ohio House's housing is located in a "Commercial Residential" zone near Newport Boulevard, a central commercial corridor in Costa Mesa. *Id.*, at 1112-1113. The Ninth Circuit also stated that the scope of Ohio House's accommodation request was broad—it said that Ohio House was challenging the City's denial of permits for "over 20 *existing* group homes in residential zones." *Id.*, at 1135.

By contrast, this case involves different kinds of plaintiffs—Insight and Ms. Doe. Insight provides mental health housing for individuals with primary mental health diagnoses, and Ms. Doe relies on Insight's mental health housing. ECF 194, p. 2. Insight's housing is located on the outskirts of the City, surrounded by similar apartment complexes in a medium density residential zone. ECF 194, p. 15. And here,

1    there is no question that Insight and Ms. Doe are seeking relief from the separation

2    requirement for a single property, not 20 properties. ECF 194, p. 18.

3              **3.      Different Evidence**

4         The Plaintiffs in this case presented evidence that was not offered in *Ohio*

5    *House*, including declarations from mental health professionals and planning experts.

6    For example, Carla DiCandia, Senior Outreach Manager of a local psychiatric

7    hospital, testified to the scarcity of mental health housing in Orange County and the

8    severe consequences—hospitalization or suicide—for individuals denied such

9    housing. ECF Nos. 147-4, 194, p. 43:10-21. Expert testimony also demonstrated that

10   Insight's residents are transitioning from intensive residential care and require a safe,

11   supportive environment to avoid regression. ECF 194, p. 43. In contrast, Ohio House

12   offered no expert testimony on its reasonable accommodation claim.

13             **4.      Different Factual Findings**

14        This Court made numerous factual findings that are distinct from the facts in

15   *Ohio House*. Some of these findings include (quoted directly from the Summary

16   Judgment Order):

17        -     There is no other housing like Insight's in Orange County. P-UF 12–13,

18        18. Insight provides housing for a different clinical population—individuals

19        with mental illness who are "stepping down" from 24-hour residential care

20        (usually in a state-licensed facility). P-UF 11–12 (citing Grosso Decl. ¶¶ 14, 38,

21        48; Beatificato Decl. ¶¶ 37–38; DiCandia Decl. ¶ 12–15, 37).

22        -     Insight's housing serves individuals who are too high-functioning to

23        require 24-hour care, but need a safe and supportive place to adjust to

24        community living. See P-UF 15 (citing Grosso Decl. ¶¶ 37, 49; Beatificato

25        Decl. ¶ 39; Doe Decl. ¶ 39).

26        -     Without Insight's housing, its residents are significantly more likely to

27        regress after leaving residential care and end up back in the hospital, or worse.

28        P-UF 16 (citing Grosso Decl. ¶ 36; Beatificato Decl. ¶ 40; DiCandia Decl.

1    ¶¶ 29–31; Doe Decl. ¶¶ 40, 42).

2    -    Individuals who do not have access to supportive housing have died by

3    suicide. P-UF 17 (citing DiCandia Decl. ¶ 30).

4    ECF 194, 43:10-21. None of these findings were made in *Ohio House*. Unlike

5    Insight's mental health housing, Ohio House was not the only housing of its kind, and

6    as noted above, the Ninth Circuit viewed Ohio House's accommodation request as far

7    broader in scope. This fact-specific analysis was critical to determining whether an

8    accommodation is reasonable, necessary, or a fundamental alteration.

9    All of these distinctions establish that this Court's individualized analysis of

10   the facts in this case and balancing of the needs of the parties was correct and

11   demonstrate why the Ninth Circuit's upholding of a jury finding regarding the

12   different facts in *Ohio House* does not warrant reconsideration of this Court's March

13   2024 ruling.

14       **D.    The Motion Does Not Identify Any Statements in this Court's March**

15            **2024 Ruling That Are Inconsistent with *Ohio House***

16   In Section VIII of its Motion, the City erroneously claims "statements" in the

17   Summary Judgment Order "along the lines that the City's Group Home Regulations

18   are discriminatory" are now "directly inconsistent" with *Ohio House*. ECF 233, p. 18

19   of 28. As discussed in Section II.G below, Section VIII of the City's Motion should

20   be stricken in its entirety because the City did not raise any of these arguments in its

21   pre-trial conference. L.R. 7-3; Standing Order, § VIII.A, p. 5. Section VIII also should

22   be disregarded because its heading concedes it is "NOT DIRECTLY AT ISSUE FOR

23   RECONSIDERATION." ECF 233, p. 18 of 28. And from a substantive standpoint,

24   the arguments in Section VIII lack merit.

25   In Section VIII, the City appears to object to the Court's explanation at

26   pages 22 through 26 of the Summary Judgment Order for why disputed facts

27   precluded entry of partial summary judgment for the City on Plaintiffs' ***Arlington***

28   ***Heights*-based** disparate treatment claim. ECF 233, pp. 18-19 of 28. This Court's

Summary Judgment Order determined Plaintiffs' *Arlington Heights*-based disparate treatment claim must be tried by a jury. ECF 194, p. 22. The City's Motion does not explain why this Court should reconsider this determination, nor does it even suggest that it should. Again, the heading of this Section concedes it is "NOT DIRECTLY AT ISSUE" in this Motion. There is nothing for the Court to reconsider with respect to Plaintiff's disparate treatment claim at this juncture.

Moreover, in Section VIII, the City again disregards the differences between *Ohio House* and this case. In *Ohio House*, both parties moved for summary judgment and judgment as a matter of law on Ohio House's **Community House-based** disparate treatment claim. 122 F.4th at 1113–14. That claim was based on an argument that the City's group home regulations "facially impose differential treatment" because they " 'treat Group Homes and Sober Living Homes differently from other dwellings that are not defined by disability.' " *Id.*, at 1116-1117. Under the burden-shifting framework in *Community House, Inc. v. City of Boise*, 490 F.3d 1041, 1048 (9th Cir. 2007), the City had an opportunity to counter that argument by "demonstrat[ing] that the *differential* treatment identified by the plaintiff actually benefits the disabled." *Ohio House*, at 1117, *citing Community House*, at 1050 (italics in original).

Here, to the extent Plaintiffs are asserting a disparate treatment claim under **Community House**, that claim was not at issue in the summary judgment proceedings. In any event, the Court did not enter summary judgment on any of Plaintiffs' disparate treatment claims. Section VIII provides no valid basis for reconsideration.

**E.** **The Motion Does Not Identify Any Material Facts the Court Failed to Consider**

Section VII of the City's Motion argues the Court must reconsider its Summary Judgment Order because the City contends the Court did not consider material facts that were in the record. ECF 233, pp. 15-17 of 28. From a substantive standpoint, Section VII does not make the required "manifest showing of a failure to consider material facts presented to the Court before the Order was entered" required by Local

Rule 7-18(c). Instead, it asks the Court to re-weigh facts the Court already considered. From a procedural standpoint, the Court should strike Section VII because as discussed below in Section II.G, the City did not meet and confer on any of the issues this Section raises prior to filing its Motion. L.R. 7-3; Standing Order, § VIII.A, p. 5. This procedural defect cannot be overlooked. Local Rule 7-3 and this Court's Standing Order are clear that parties must thoroughly discuss the substance of all arguments before filing a motion. By raising new arguments and reinterpreting evidence without prior notice to Plaintiffs, the City has undermined the very purpose of these requirements.

### 1. The Court Considered the City's Group Home Regulations for the R2 Zone

The City's contention that the Court "seemingly failed to recognize or consider" its regulations for group homes in R2 (multifamily) zones is not only procedurally improper but also factually baseless. ECF 233, p. 21 of 28. If the City had disclosed this contention in its Local Rule 7-3 conference, Plaintiffs would have encouraged the City's legal counsel to use "control + f" to search for "R2" or "Ord. 15-11" in the Summary Judgment Order. With two keystrokes, the City could have easily located the parts of the Summary Judgment Order that demonstrate that the Court did, in fact, consider the City's R2 regulations. *See, e.g.*, ECF 194, 17:23–18:5 (summarizing group home regulations for R2 zones); *id.*, at 23:8-11 (referencing Plaintiffs' evidence of discriminatory intent for group home regulations for both R1 and R2 zones); *id.*, at 23:15-17 (noting one purpose of group home regulations for both R1 and R2 zones was to reduce the number of group homes); *id.*, at 23:27–24:2 (noting group home regulations are retroactive to R2 zones). The City's argument disregards all of this analysis.

### 2. The Court Considered Ms. Le's Declaration and the Recitals to the Group Home Ordinances

For Plaintiffs' disparate treatment claim (which is based on *Arlington Heights*,

not *McDonnell Douglas*, as the City mistakenly argued in the summary judgment proceedings [ECF 140, 19:22-32:13]), the Summary Judgment Order determined that the City is not entitled to partial summary judgment because there are material disputed facts regarding whether the City's group home regulations and treatment of Plaintiffs were motivated by discriminatory intent. ECF 194, pp. 21-27. Specifically, the Court determined that "Insight has presented enough evidence to raise a triable issue of fact as to whether there was a discriminatory intent against individuals with disabilities with respect to the City's enactment of the ordinances, as well as against Insight under the *Arlington Heights* factors." *Id.*, 24:18-21. Section VII of the City's Motion faults the Court for not accepting the recitals to its Group Home Ordinances as evidence of the truth of the matter asserted therein and claims the Court disregarded statements in its former Economic and Planning Director, Jennifer Le's declaration about the City's purported intent for its group home regulations.[6]

There are at least five problems with these contentions. First, the Motion does not point to any part of the City's moving, opposition, or reply papers where the City asked the Court to consider this evidence in connection with any claim or defense. Second, the Court did, in fact, consider this evidence; the Court determined that the recitals to the Group Home Ordinances "do not demonstrate that the group home regulations are not facially discriminatory" (ECF 194, 26:9-10) and sustained Insight's objections to parts of Ms. Le's declaration. ECF 194, 14:1-4. Third, even if the Court reconsidered this evidence, it would not resolve the factual disputes on whether the City acted with discriminatory intent in adopting its group home regulations and in applying those regulations to Plaintiffs. Those disputes would still need to be resolved by a jury. ECF 194, pp. 23 & 38, n. 20. Fourth, although the City now claims this evidence is also relevant to the City's fundamental alteration defense (*see* ECF 233, p. 23 of 28), the City never raised this in the summary judgment

---

[6]   Insight objected to some of these statements on the basis that they contained improper legal opinions (ECF 169 [Objections #1, 2, 3]), and the Court sustained those objections. ECF 194, 14:1-4.

proceedings. Instead, the City "relied solely on … the idea that it cannot waive the separation requirement—as doing so would undermine its argument that the separation [requirement] is fundamental" and otherwise "declined to present any evidence to controvert Insight's evidence that its request accommodation was reasonable and necessary." ECF 194, 43:23-27. Finally, as discussed below in Section II.G, the City's complete failure to meet and confer on these issues in advance of filing the Motion requires that they be stricken. Standing Order, § VIII.A, p. 5.

### F.   The City Has Not Provided Any Viable Local Rule 7-18 Basis for Reconsideration

Local Rule 7-18 explicitly prohibits motions for reconsideration from "repeat[ing] any oral or written argument made in support of, or in opposition to, the original motion." Here, the City's Motion for Reconsideration does precisely that. Instead of directing the Court to overlooked material facts, new material law, or new evidence that was unavailable at the time of the Court's Summary Judgment Order, the City rehashes arguments it already made during summary judgment.

The Ninth Circuit's decision in *Ohio House* does not salvage the City's case. As this Court correctly held, Plaintiffs offered compelling evidence—including expert declarations—demonstrating the need for and reasonableness of their requested accommodation. ECF 194, 43:10-21. If evidence existed that supports a fundamental alteration defense in this case, the City had ample opportunity to present it during summary judgment proceedings. Instead, the City offered ***no*** evidence to rebut Plaintiffs' showing, and instead, relied on conclusory and generic arguments that this Court rightly rejected (i.e., the tautological "idea that it cannot waive the separation requirement—as doing so would undermine its argument that the separation [requirement] is fundamental"). *Id.*, at 43:22-28. The City's Motion largely repeats the same failed arguments that this Court correctly rejected in the summary judgment proceedings.

This Court should deny the City's Motion for Reconsideration in its entirety.

The City's attempt to revisit settled issues under the guise of new law from *Ohio House* is procedurally improper, factually unsupported, and legally meritless.

**G.      The City Failed to Adequately "Meet and Confer" Under Local Rule 7-3**

In addition to the fatal substantive defects discussed above, the City's compliance with Local Rule 7-3 was deficient in several respects. Local Rule 7-3 requires parties to "discuss thoroughly" the substance of a contemplated motion at least 7 days prior to filing. "The meet and confer requirement exists for the sake of judicial economy and to avoid unnecessary costs to the parties." *Sovany Beverage Co., LLC*, 222CV00638MEMFJPRX, 2022 WL 21828627, at *3, n.3 (C.D. Cal. Aug. 15, 2022). Consistent with Local Rule 7-3, this Court's Standing Order requires the parties to "discuss in real-time *all issues* to be raised in the motion, as well as the law and evidence relevant to those issues, so that the parties' briefing reflects that they are fully cognizant of the other side's position(s)." Standing Order, § VIII.A, p. 5 (emphasis added).

Given the content of the Motion, the City's January 6, 2025 video conference failed to meet these requirements in numerous respects. The conference lasted approximately five minutes. Declaration of Mary Helen Beatificato in Supp. of Plaintiffs' Opp. To City's Mot. for Reconsideration ("Beatificato Decl."), ¶ 6; Declaration of Alisha Patterson in Supp. of Plaintiffs' Opp. To City's Mot. for Reconsideration ("Patterson Decl."), ¶ 6; Declaration of Autumn Elliott in Supp. of Plaintiffs' Opp. To City's Mot. for Reconsideration ("Elliott Decl."), ¶ 4. During those five minutes, the City's counsel, Christopher Lee, initially reiterated the general claim that the Ninth Circuit's *Ohio House* decision justifies reconsideration of this Court's ruling on Plaintiffs' reasonable accommodation claim. Beatificato Decl., ¶ 7; Patterson Decl., ¶ 7; Elliott Decl., ¶ 5. When pressed for specifics about the Motion's substance, Mr. Lee referred Plaintiffs' counsel to the *Ex Parte* Application the City filed on December 26, 2024 (i.e., ECF 228). *Id.* Counsel for Insight, Mary Helen

Beatificato pointed out that the *Ex Parte* Application did not contain a copy of the proposed Motion or otherwise set forth specific bases for the Motion. *Id.* Mr. Lee responded by stating,

> "The Court improperly granted the motion for summary judgment based on not applying the fundamental alteration law. The Ninth Circuit has made clear that the law is applicable and it warrants denial of the reasonable accommodation claim."

Beatificato Decl., ¶ 8; Patterson Decl., ¶ 8; Elliott Decl., ¶ 6. Mr. Lee asked if this was "sufficient," and counsel for the Plaintiffs agreed that, if misapplication (or nonapplication) of new "fundamental alteration law" to Plaintiffs' reasonable accommodation claim was the ***sole basis*** for the City's Motion, then the City had exhausted its duty to confer. Beatificato Decl., ¶ 9; Patterson Decl., ¶ 9; Elliott Decl., ¶ 7. Plaintiffs relied on this representation.

But that is not the ***sole basis*** for the City's Motion. As noted above, the Motion for Reconsideration includes at least two entirely new topics—(1) the Court's purported failure to consider material facts (§ VII); and (2) various "statements along the lines that the City's Group Home Regulations are discriminatory," which the City concedes are not at issue in its Motion but nonetheless contends are inconsistent with *Ohio House* (§ VIII). ECF 233, pp. 15-19. Further, the parts of the Motion that purport to address the Court's application of "fundamental alteration law" instead focus on legal standards (e.g., whether the City had discriminatory intent) and on evidence (e.g., former Director of Economic and Development Services, Jennifer Le's testimony at the *Ohio House* trial) that are irrelevant to a reasonable accommodation claim because reasonable accommodation claims do not require any showing of discriminatory intent. The City did meet and confer on ***any*** of these issues. Beatificato Decl., ¶ 11; Patterson Decl., ¶ 11; Elliott Decl., ¶ 9.

Plaintiffs cannot "discuss thoroughly" a Motion without knowing its substance, which the City did not adequately disclose during its January 6, 2025 video

conference nor in its December 26, 2024 *Ex Parte* Application. The City's noncompliance with Local Rule 7-3 prejudices Plaintiffs by forcing them to respond to a Motion without having the benefit of the thorough pre-filing discussions required by Local Rule 7-3 and Section VIII(A) of this Court's Standing Order. Beatificato Decl., ¶ 13; Patterson Decl., ¶ 14; Elliott Decl., ¶ 11. As a result, Plaintiffs are left to address numerous arguments that could have been clarified or narrowed during the meet-and-confer, had the City complied with its obligations. *Id.*

The Standing Order cautions counsel that "[t]he Court may strike or outright deny a motion or other relief if counsel fails to meet and confer in good faith." Standing Order, § VIII.A, p. 5; *see also* L.R. 7-3 ("The Court may decline to consider a motion unless it meets the requirements of L.R. 7-3 through 7-8."). Moreover, the Standing Order specifies that "if the briefing reveals that the parties have not sufficiently conferred with respect to the issues and position(s) presented, ***the motion shall be stricken***." Standing Order, § VIII.A, p. 5 (emphasis added). For these reasons alone, this Motion should be denied. *See, e.g.*, *Graybill v. Nat'l Sec. Agency*, No. 2:23-CV-08754-MEMF-JC, 2025 WL 35983, at *2 (C.D. Cal. Jan. 3, 2025) (Frimpong, J.) (denying motion both for "failure to abide by Local Rule 7-3" and because it was "unmeritorious"). At a minimum, the Court should limit the scope of the City's Motion to the application of *Ohio House*'s "fundamental alteration law" to Plaintiffs' reasonable accommodation claim. *See, e.g.*, *Bacon v. Artificial Grass Liquidators Location 1, Inc.*, No. 818CV01220JLSADS, 2019 WL 7841078, at *2 (C.D. Cal. Nov. 8, 2019) (denying motion when moving party "did not properly address the full scope of his intended motion in any meet and confer").

### H.    This Motion is Part of a Broader Strategy to Avoid the Repercussions of the Court's March 2024 Ruling

This Motion is one of many actions the City has taken after the Court entered partial summary judgment for Plaintiffs on Plaintiffs' reasonable accommodation

claim that unnecessarily extends the life of this litigation.[7] The Court entered the Summary Judgment Order nearly one year ago, yet it has had virtually no impact on the City's discriminatory practices with respect to Plaintiffs. For example, the City's Motion for Reconsideration indicates that the City still characterizes Insight's housing as a "large multi-adult facility" that is no different from other group homes (including sober living homes). ECF 233, p. 21 of 28. This perception is completely inconsistent with the facts in the record and reality.

The City's failure to acknowledge that determining whether to grant a reasonable accommodation request requires a fact-specific inquiry is not limited to its conduct in this litigation; it is indicative of how the City mishandled Plaintiffs' reasonable accommodation request at every opportunity (first through staff, then the Planning Commission, then City Council, and ultimately through the positions it advanced in this litigation). Rather than evaluating the unique circumstances of Insight's housing, the needs of its residents, and the specific characteristics of the neighborhood, the City applied a generalized, one-size-fits-all approach to its group home regulations. This flawed approach ignored the Fair Housing Act's requirement for individualized analysis, as well as the Ninth Circuit's directive in *Ohio House* that "[r]easonable accommodation claims are highly fact-specific, requiring case-by-case determination." 122 F.4th at 1133. This ongoing failure to engage with the specific facts and evidence of Plaintiffs' case demonstrates a persistent and ongoing disregard for the Fair Housing Act's legal standards, which has carried over into this Motion and the City's broader litigation strategy.

---

[7] Other examples include: refusing to respond to Plaintiffs' efforts to meet and confer on a Court-ordered joint report, resulting in the Court needing to extend the deadline to file the report (ECF Nos, 199, 201, 202); insisting the Court cannot grant relief on Plaintiffs' failure to accommodate claim until after a jury trial on all of Plaintiffs' other claims (ECF 197); filing an *Ex Parte* Application requesting the Court "clarify" that Plaintiffs are barred from filing a Motion for Injunctive Relief and requesting the Court stay the proceedings indefinitely (ECF 207); and filing another *Ex Parte* Application requesting the Court continue the hearing on Plaintiffs' timely-filed and fully-briefed Motion for Injunctive Relief until at least two-weeks after the Court hears the City's not-yet-filed Motion for Reconsideration (ECF 228).

After the Ninth Circuit issued its decision in *Ohio House* on December 4, 2024, the City waited over six weeks—until January 16, 2025—to file this Motion for Reconsideration.[8] The City had ample time to engage in a meaningful pre-filing conference and prepare and file this Motion in December of 2024. Instead, it chose to wait until December 22, 2024 to even start the meet and confer process for this Motion. Beatificato Decl., ¶ 3; Patterson Decl., ¶ 3; Elliott Decl., ¶ 2. This dilatory conduct violates the spirit of the Fair Housing Act, which emphasizes timely resolution of claims to prevent unnecessary harm to individuals with disabilities. *See* Joint Statement of the Department of Housing and Urban Development and the Department of Justice, *Reasonable Accommodations Under the Fair Housing Act* (May 17, 2004), #15, p. 11, available at https://www.hud.gov/sites/documents/huddojstatement.pdf (last visited Jan. 29, 2025). The City's long delay in filing this Motion, combined with its focus on public relations rather than diligently working with the other parties to bring this litigation to an end, reflects an ongoing strategy to drag out this litigation as long as possible rather than face the consequences of violating fair housing laws.

## I.  Even if the City's Motion is Granted, *Ohio House* Does not Change the Result of this Court's Summary Judgement Order

Even if *Ohio House* were a "change in law" that justified reconsideration of the Court's reasonable accommodation ruling (which Plaintiffs dispute), for the reasons outlined above, *Ohio House* does not change the end result of the summary judgment proceedings. The Court's Summary Judgement Order has carefully outlined undisputed facts and determinations of law that will narrow the issues for trial and

---

[8] During those six weeks, the City prioritized its public relations campaign over promptly addressing the legal implications of the *Ohio House* decision on this Court's Summary Judgment Order. The City wasted no time giving statements to media outlets touting *Ohio House* as a "sweeping" victory that would "discourage future challenges." *See, e.g.*, Patterson Decl., ¶ 3, Ex. 1. These public statements reflect a strategic decision by the City to capitalize on its perceived victory in *Ohio House* in the court of public opinion while neglecting to timely raise the same issues in this case.

1  could facilitate settlement of this action. The Ninth Circuit's *Ohio House* decision

2  provides no basis to disturb the forward progress that has been achieved in this case.

3  **III.   CONCLUSION**

4       The City's Motion for Reconsideration is procedurally improper and

5  substantively deficient. Plaintiffs respectfully request that this Court deny the Motion

6  and reaffirm its March 2024 Summary Judgment Order.

7  Dated: March 18, 2025                    RUTAN & TUCKER, LLP

8

9                                          By: _____
                                                Alisha Patterson

10                                         Attorneys for Plaintiff and Counter-
                                           Defendant, INSIGHT
11                                         PSYCHOLOGY AND ADDICTION,
                                           INC. and Counter-Defendants MARY
12                                         HELEN BEATIFICATO and
                                           GERALD GROSSO
13

14  Dated: March 18, 2025                  LAW OFFICE OF AUTUMN ELLIOTT

15

16                                         By: /s/ Autumn Elliott *(with permission)*
                                               Autumn Elliott
17                                             Attorneys for Plaintiff JANE DOE

18

19  Dated: March 18, 2025                  DISABILITY RIGHTS CALIFORNIA

20                                         By: /s/ Zeenat Hassan *(with permission)*
                                               Zeenat Hassan
21                                             Attorneys for Plaintiff JANE DOE

22

23  Dated: March 18, 2025                  BRANCART & BRANCART

24

25                                         By: /s/ Christopher Brancart *(with permission)*
                                               Christopher Brancart
                                               Attorneys for Plaintiff JANE DOE
26

27  *** *All other signatories listed, and on whose behalf the filing is submitted, concur*

28  *in the filing's content and have authorized the filing (L.R. 5-4.3.4)* ***