**EVERETT DOREY LLP**
Seymour B. Everett, III, SBN 223441
  severett@everettdorey.com
Samantha E. Dorey, SBN 281006
  sdorey@everettdorey.com
Christopher D. Lee, SBN 280738
  clee@everettdorey.com
2030 Main Street, Suite 1200
Irvine, California 92614
Phone: 949-771-9233
Fax: 949-377-3110

**JONES & MAYER**
Kimberly Hall Barlow, Esq., SBN 149902
  khb@jones-mayer.com
3777 North Harbor Boulevard
Fullerton, CA 92835
Telephone: (714) 446-1400
Facsimile: (714) 446-1448

Attorneys for Defendant and Counter-Plaintiff, CITY OF COSTA MESA

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| INSIGHT PSYCHOLOGY AND ADDICTION, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF COSTA MESA, a municipal corporation; and DOES 1-10, inclusive,<br><br>Defendant.<br><br>CITY OF COSTA MESA, a municipal corporation,<br><br>Counter-Plaintiff,<br><br>vs.<br><br>INSIGHT PSYCHOLOGY AND ADDICTION, INC., a California corporation; MARY HELEN | **Case No. 8:20-cv-00504-MEMF-JDE**<br><br>Assigned to the Hon. Maame Ewusi-Mensah Frimpong<br><br>**DEFENDANT CITY OF COSTA MESA'S REPLY TO PLAINTIFFS' JOINT OPPOSITION TO MOTION FOR RECONSIDERATION OF PARTIAL SUMMARY JUDGMENT FOR PLAINTIFFS BASED ON RECENT (DECEMBER 2024) NEW NINTH CIRCUIT LAW**<br><br>Action Filed:     March 12, 2020<br>Trial Date:        October 27, 2025 |

-1-   Case No. 8:20-cv-00504-MEMF-JDE
CITY'S REPLY FOR MOTION FOR RECONSIDERATION OF PARTIAL SUMMARY JUDGMENT FOR PLAINTIFFS BASED ON NEW LAW

| | |
|---|---|
| 1 | BEATIFICATO, an individual; GERALD GROSSO, an individual; and ROES 1-50, |
| 2 | |
| 3 | Counter-Defendants. |

EVERETT DOREY LLP
2030 MAIN STREET, SUITE 1200
IRVINE, CALIFORNIA 92614
TELEPHONE 949-771-9233 ♦FAX 949-377-3110

# TABLE OF CONTENTS

**Page**

I. OHIO HOUSE IS NEW LAW AND A MATERIAL CHANGE IN LAW WARRANTING RECONSIDERATION .................................................. 5

II. PLAINTIFFS NONSENSICALLY TRY TO ANALOGIZE *SCHWARZ* AND *ANDERSON* ........................................................................... 8

III. PLAINTIFFS COMPLETELY MISCONSTRUE THE CITY'S MOTION AND OHIO HOUSE ................................................................. 8

IV. PLAINTIFFS' REPEATED ARGUMENT ABOUT SEQUENCE OF EVENTS IS NONSENSICAL .......................................................... 10

V. THIS COURT'S FAILURE TO CONSIDER MATERIAL FACTS FURTHER WARRANTS RECONSIDERATION ................................ 11

VI. PLAINTIFFS' LOCAL RULE 7-3 ARGUMENT IS COMPLETELY DISINGENUOUS AND UNFORTUNATE .......................................... 12

VII. PLAINTIFFS' ARGUMENT ABOUT THE CITY'S LITIGATION CONDUCT IS DISINGENUOUS ..................................................... 14

VIII. CONCLUSION ................................................................................. 14

EVERETT DOREY LLP
2030 MAIN STREET, SUITE 1200
IRVINE, CALIFORNIA 92614
TELEPHONE 949-771-9233 ♦ FAX 949-377-3110

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Giebeler v. M&B Assocs.*
    343 F.3d 1143, (9th Cir. 2003) .................................................................... 5, 6

## I. OHIO HOUSE IS NEW LAW AND A MATERIAL CHANGE IN LAW WARRANTING RECONSIDERATION

The City's Motion included that the Ohio House Ninth Circuit Opinion ("Ohio House") constituted new law and a change in law not just because it developed and established the separate and distinct "fundamental alteration" defense into Ninth Circuit law but also because it established in the law that, as argued in the Motion:

> Furthermore, the Ninth Circuit held that the City's exact same evidence as in this action on summary judgment – the Group Home Regulations themselves and essentially the same testimony of Jennifer Le – which was the City's **only** evidence in the Ohio House trial as to the City's fundamental purpose of zoning and the City's fundamental alteration defense, was sufficient for the Ninth Circuit to find that the City's fundamental alteration defense to the reasonable accommodation claim was valid and supported by sufficient evidence. If such evidence was sufficient to support judgment for the City, it necessarily was more than enough evidence to at least create a question of fact to survive summary judgment. This is especially true given the law requiring all inferences be drawn in favor of the City on Plaintiffs' Motion for Partial Summary Judgment.

Plaintiffs argue that Ohio House is not "new law" or a "material change in law" because it supposedly "reaffirms existing law regarding the case-by-case nature of reasonable accommodation analysis." [Opposition at 7[1]:10-13] Plaintiffs also argue that the term "fundamental alteration" was already referenced in the Ninth Circuit Giebeler case and is therefore not "new." [Opposition at 8:24-10:2]

Plaintiffs' arguments miss the point. Even if "fundamental alteration" as a concept was mentioned in Giebeler, the Ninth Circuit did not apply it or analyze it in any way in Giebeler, but instead just found that the requested accommodation in that case was "reasonable on its face." See Giebeler v. M&B Assocs., 343 F.3d 1143, 1157-59 (9th Cir. 2003). The defendant in Giebeler did not argue "fundamental

---

[1] Plaintiffs did not comply with the page numbering rules and thus the labeled page numbers do not match with the pdf pages. The page "7" referenced is the pdf page, but it corresponds to labeled page "1" on Plaintiffs' Opposition.

alteration." Id. Giebeler also only dealt with a private apartment complex, not a public entity, and did not analyze "fundamental alteration" in terms of government purposes. Id. Nor did Giebeler address the evidentiary standards. Id.

Regardless of whether the concept of "fundamental alteration" was referenced in a 2003 case, this Court held that the City's "fundamental alteration" defense arguments were not applicable under Ninth Circuit law in this context. Presumably even had the City cited Giebeler, which simply mentions the concept but has no analysis of fundamental alteration or application to this context, it would not have changed this Court's analysis and conclusion on the law. To the contrary, Ohio House does analyze and apply "fundamental alteration" to this very same context and situation. Even if Ohio House did not introduce the concept of "fundamental alteration" into Ninth Circuit cases, it certainly developed the legal application of it and established that it was a full defense to a reasonable accommodation claim **regardless of whether the requested accommodation is shown to be "necessary" and "reasonable" in other respects, such as in terms of the applicant's business operations.** Plaintiffs further fail to recognize that the law, under Ohio House, is clear now that even if Plaintiffs had evidence that their business operations were necessary, suitable and reasonable for their own purposes and own clientele, that is separate and distinct from the issue of whether the requested accommodation would fundamentally alter **the City's** zoning purposes and goals. Plaintiffs' incorrect understanding is reflected in their argument that "this Court determined that 'Insight presented evidence that the requested accommodation was possible and reasonable on its fact' while '[t]he City has not pointed to any evidence demonstrating that the accommodation was not reasonable." [Opposition at 10:16-20] "Reasonable" is not the issue, "fundamental alteration" is.

Plaintiffs further miss the point with their arguments regarding the need for a factual "case-by-case" and "highly fact-specific" analysis. Plaintiffs' arguments are actually in favor of reconsideration of this Court's summary judgment ruling

1 because summary judgment is improper when there are factual questions.  Plaintiffs
2 erroneously argue that since they believe that they proved things like "There is no
3 other housing like Insight's" and that "Without Insight's housing, its residents are
4 significantly more likely to regress," that they proved "necessity" and
5 "reasonableness," and thus there are no factual questions that prevent summary
6 judgment.  But this is erroneously based on the incorrect belief that "necessity" and
7 "reasonableness" of Plaintiffs' own operations for its own clientele are somehow
8 relevant or dispositive of the "fundamental alteration" analysis.  They are not, as
9 established by Ohio House.  "Fundamental alteration" is about the effect, whether
10 potential or theoretical, on **the City's** zoning purposes and goals, not reasonableness
11 for Plaintiffs' operations or their suitability for their clientele, and more importantly,
12 "fundamental alteration" is a separate and distinct defense that applies regardless of
13 "necessity" and other issues of "reasonableness."
14    As Ohio House established, the type of evidence that is relevant and sufficient
15 for judgment for the City is comprised of the City's Ordinances and Regulations that
16 set forth the City's zoning purposes and goals, and the testimony of the City
17 representative, Jennifer Le, that "echoed" such purposes and goals.  Quite notably,
18 Plaintiffs' Motion for Partial Summary Judgment and Plaintiffs' Opposition to the
19 City's Motion for Summary Judgment did not address "fundamental alteration," and
20 did not argue that the City's evidence (Ordinance and Regulations and Declaration
21 of Jennifer Le) was insufficient or questionable for establishing "fundamental
22 alteration."  Quite tellingly, Plaintiffs in their current Opposition continue to fail to
23 address the true issue of "fundamental alteration" and the City's evidence regarding
24 that issue.  Instead, Plaintiffs falsely argue that "the City offered *no* evidence" on
25 fundamental alteration.  [Opposition at 25:21-25]  Clearly Plaintiffs are wrong under
26 the new Ohio House evidentiary law that the City's evidence was sufficient to
27 support judgment on fundamental alteration.  This evidentiary standard is also "new
28 law" established by Ohio House that further warrants reconsideration.

Ohio House further established that the potential and theoretical effect of a large commercial facility housing a large number of adults with disabilities (regardless of the "type" of disability) in a residential neighborhood, overcrowded with any other such large facilities, would fundamentally alter the City's zoning purposes and goals, including the "legitimate, nondiscriminatory reasons for the Group Home Regulations [which] are 'to preserve the residential character,' 'to free the handicapped [] from institutional style living,' to reduce 'overcrowding, inordinate amounts of second-hand smoke,' 'noise and traffic,' and to promote safety and well-being of both the clients of group homes as well as the community."  [See Dkt. 143 at 7:12-23; Dkt. 140-1 (Declaration of Jennifer Le) at ¶¶ 3, 12]

## II. PLAINTIFFS NONSENSICALLY TRY TO ANALOGIZE *SCHWARZ* AND *ANDERSON*

Plaintiffs try to analogize the Eleventh Circuit Schwarz and Sixth Circuit Anderson cases while ignoring Ohio House that is directly applicable, controlling law on this very situation.  It is unclear how "tourist dwelling" and "therapy horse" cases from other Circuit have any bearing on this action now that controlling Ninth Circuit law in Ohio House has definitively set forth the exact legal framework and pronouncements for this same situation, these exact same regulations, the exact same evidence, and the exact same "fundamental alteration" issues.  Even stranger, Ohio House already cited and analyzed Schwarz and Anderson and still came to the conclusion that the City's fundamental alteration defense was valid.

## III. PLAINTIFFS COMPLETELY MISCONSTRUE THE CITY'S MOTION AND OHIO HOUSE

Plaintiffs misconstrue and mischaracterize the City's Motion.  First, Plaintiffs argue that *res judicata* and issue preclusion do not apply.  The City did not argue those doctrines in the Motion.

Second, Plaintiffs mischaracterize the City as seeking a "universal" rule under Ohio House.  The City did not argue that in the Motion.  Instead, very clearly, the

City argued that, pursuant to Ohio House, there was enough evidence on the "fundamental alteration" issue that precluded summary judgment for Plaintiffs because at the very least there were questions of fact as to whether the requested accommodation could have an effect on the City's zoning purposes and goals. While the City maintains that a jury should and would still find that the City's "fundamental alteration" defense is proven and applies in this case as a defense, that is not the same as the City claiming entitlement to a "universal" "blanket rule" as Plaintiffs misrepresent that the City is doing.

Third, Plaintiffs' mischaracterize the City as arguing against a fact-specific, "case-by-case" analysis. The City did not argue that in the Motion. The Motion is literally asking for a trial by jury where all relevant evidence can be presented for the jury to make that fact-specific, case-by-case analysis. But Plaintiffs misunderstand what the relevant facts to be analyzed for "fundamental alteration." The relevant facts for "fundamental alteration" of the City's zoning purposes and goals **do not** include what type of disabled the clientele is, whether they "are too high-functioning" but still need transitional support, whether they are "significantly more likely to regress," and all the other facts that Plaintiffs refer to, including the entirely irrelevant expert testimony of a psychiatric outreach manager on issues not having anything to do with the City's zoning purposes and goals ("Plaintiffs' Facts"). The relevant facts are the City's zoning goals and purposes, and the potential and theoretical effect on those goals and purposes from the requested accommodation. An additional reason why Ohio House is particularly applicable is because the relevant facts are essentially the same with this case – the goals and purposes are exactly the same, the requested accommodations are essentially exactly the same (ignore the 650-foot separation and zoning requirements for a large commercial facility with many units and dozens of disabled part-time, transitory adult residents), and the potential and theoretical effects are exactly the same (overcrowding, institutionalization of disabled persons, change in the residential character of the

neighborhood, and secondary effects like increased traffic, parking, noise, infrastructure strain, etc.). Quite tellingly, the City's purposes and goals would be maintained if Insight had complied with the separation requirement and relocated to a compliant property (of which there are thousands in the City). The fact that this alone – changing location to address the City's goals but not changing anything about Plaintiffs' business operations and clientele – would be enough to not "fundamentally alter" the City's zoning is proof that Plaintiffs' Facts are irrelevant to that issue. The City has not argued that Plaintiffs' Facts or a case-by-case analysis are not relevant to **other** issues, but those issues are not at issue in this Motion.

Fourth, Plaintiffs misrepresent that Ohio House was based on the type of disabled person and denial of "over 20 existing group homes." That is entirely false. While, Ohio House involved separate claims for facial discrimination and "pattern and practice" claims regarding the City's overall denial of permits, such claims were entirely separate and distinct from the "fundamental alteration" issues in Ohio House. To the contrary, Ohio House's reasonable accommodation claim was essentially identical to Plaintiffs' claim here, and the City's reason for denying the request in Ohio House was also essentially identical, including because of the separation conflict with **one single other** facility creating a "fundamental alteration" to the City's zoning purposes and goals, and **not** including anything about "denial of permits for 'over 20 existing group homes."

Fifth, Plaintiffs misconstrue the City's Motion Section VIII as somehow a basis for reconsideration. The City did not argue that. In fact, the City expressly prefaced the Section that it was not at issue for the reconsideration requested. The Section merely highlights additional inconsistent statements in the Order that are now contradicted as a matter of law by Ohio House.

## IV. PLAINTIFFS' REPEATED ARGUMENT ABOUT SEQUENCE OF EVENTS IS NONSENSICAL

Plaintiffs repeatedly argue that since the City would have allowed them to

1 operate if they were the first group home in the area, that that somehow definitively
2 proves no "fundamental alteration." Plaintiffs' argument is nonsensical. Of course
3 if Insight was the first facility without any other conflicting facility existing within
4 650 feet, then the separation requirement would not be an issue. And of course if
5 there are already existing conflicting facilities, then the separation requirement
6 would be an issue. That is how the regulations are designed, the sequence is
7 fundamental. "Priority" and "first come, first serve" and related concepts are well-
8 known and completely acceptable concepts. Plaintiffs' argument seemingly requires
9 the City to clairvoyantly predict later-existing facilities, and know about facilities
10 that the City does not know about, and take them all into account to deny permits
11 based on future circumstances.

12    While it is difficult to discern any logic in Plaintiffs' argument, it seems to be
13 based on the essential misunderstanding that Plaintiffs seem to think that
14 "fundamental alteration" has to do with Plaintiffs' operations as opposed to the
15 City's purposes and goals. Plaintiffs seem to argue that their business operations are
16 so "reasonable" that the fact that the City might have allowed such "reasonable"
17 business operations in one sequence of events (no separate conflict), means that the
18 City admits that their business operations are "reasonable." Of course, this misses
19 the point entirely, as described above.

## V. THIS COURT'S FAILURE TO CONSIDER MATERIAL FACTS FURTHER WARRANTS RECONSIDERATION

22    Plaintiffs' argument is that this Court referenced evidence in other sections of
23 the Order, so this Court must have considered such evidence. To the contrary, the
24 City's cited language from the Order indicates no consideration of the relevant
25 evidence for the particular issues at play. The law and logic do not allow for the
26 disregard of material facts for the determination of specific issues for which those
27 facts are relevant, as long as there is some indication that such material facts were
28 referenced elsewhere in an opinion, and Plaintiffs cite no such law.

1  Plaintiffs do not dispute the City's argument that: The summary judgment
2  standard required that this Court "must view the facts and draw inferences in the
3  manner most favorable to the non-moving party."  The clear inference (not to
4  mention the actual facts) that can and is required to be drawn in favor of the City
5  from the City's regulations and representative, Jennifer Le, which both state the
6  City's fundamental purpose of its regulations, is that such statements are true.  This
7  Court's finding that the evidence (language of the Ordinances and Ms. Le's
8  Declaration) did not support the truth of the statements therein is a misapplication of
9  the summary judgment standards and a failure to consider material facts.

10  Instead, Plaintiffs argue that "even if the Court reconsidered this evidence, it
11  would not resolve the factual disputes on whether the City acted with discriminatory
12  intent . . . .  Those disputes would still need to be resolved by a jury." [Opposition
13  at 24:20-24]  That is exactly the City's point – the evidence at the very least creates a
14  factual dispute that needs to be resolved by a jury and thus, summary judgment for
15  Plaintiffs is not appropriate.

## VI.  PLAINTIFFS' LOCAL RULE 7-3 ARGUMENT IS COMPLETELY DISINGENUOUS AND UNFORTUNATE

18  Plaintiffs counsel has a consistent and long history in this matter of trying to
19  take advantage of rules, such as Local Rule 7-3, to prevent the City from seeking
20  relief, while at the same time utterly failing to abide by such rules themselves.  An
21  egregious example is that on October 3, 2024, the City's counsel not only gave
22  verbal and written notice of the substance of an Application by the City, but also the
23  City's counsel sent in advance the entire draft of the Application to give as much
24  advance notice of the substance as possible.  However, in Plaintiffs' Opposition
25  [Dkt. 212] they still argued that the City's notice including notice of the substance of
26  the Application was "deficient" (despite having the entire Application).  Plaintiffs'
27  counsel have consistently never been satisfied with any notice or attempt by the
28  City's counsel to meet and confer pursuant to Local Rule 7-3, regardless of the City's

counsel's repeated attempts to respond to every request and complaint.

In this instance, Plaintiffs' counsel's characterization of the City's counsel's meet and confer efforts are inaccurate, false, disingenuous and unfortunate. The City's counsel during the parties' meet and confer conference provided a full description of the substance and requested relief and basis therefore for the Motion for Reconsideration. Plaintiffs' counsel confirmed at the outset words to the effect of "nothing the City's counsel could say would convince them to agree to any aspect of the City's intended Motion." The City's counsel even held two separate meet and confer sessions with Plaintiffs' different counsel who were unable to join the meeting together. Both times, the City's counsel also intentionally asked Plaintiffs' counsel to confirm compliance with Local Rule 7-3 due to the history of Plaintiffs' counsel attempting to abuse the Rule, and Plaintiffs' counsel also expressly confirmed that they agreed that the City had complied with its obligations under Local Rule 7-3 and that they would not object to the Motion on the basis of any failure to meet and confer. Additionally, in response to meet and confer efforts they simply stated words to the effect that "the intended motion is procedurally and substantively improper" but they did not actually attempt to meet and confer in any respect, including refusing to explain the substance of their positions, arguments or case authority, which is consistent with every instance of meeting and conferring in this action. Instead, as apparent by the argument in the Opposition they very purposefully attempted to concoct an argument, that they have now made, to try to oppose the City's Motion on a technicality.

Plaintiffs' counsel have had the City's Motion for Reconsideration since it was filed on January 16, 2025, two months prior to the filing of their Opposition. Since then, Plaintiffs' counsel have never contacted the City's counsel to attempt to meet and confer on any aspect of the Motion, even though the City's counsel has expressly stated that they are willing and able to meet and confer further. Plaintiffs' counsel's refusal to even attempt to meet and confer further confirms the futility to

attempt to reach a compromise through meeting and conferring given Plaintiffs' counsel express refusal to do so no matter what. The Motion should not be denied based on an alleged failure to meet and confer.

## VII. PLAINTIFFS' ARGUMENT ABOUT THE CITY'S LITIGATION CONDUCT IS DISINGENUOUS

Plaintiffs fault the City for various filings, which this Court actually agreed with the City and **granted** the City's relief. [See Opposition at 29:24-28] They additionally repeat their complaints about the timing of this Motion, which again, this Court has already ruled on (finding the City's counsel did not lack diligence) when granting permission for the City to move forward with the Motion. Such repeated complaints are inappropriate.

## VIII. CONCLUSION

The Ninth Circuit has now directly addressed the City's Group Home Regulations and determined that they are valid, beneficial to disabled persons and group homes, that the City did not discriminate, and that upholding the regulations including denying accommodation requests seeking to ignore the separation requirement is fundamental to the legitimate zoning purposes of the City. The City did not violate the law as to Plaintiffs and certainly did not illegally deny Plaintiffs' reasonable accommodation request, as the new Ninth Circuit law makes clear. The City at least deserves a chance to present to a jury its position and, like the jury in Ohio House, the City expects that such jury will agree that the City did nothing wrong here. This Court's grant of partial summary judgment improperly deprived the City of its right to a jury trial, and it is now clear that such partial summary judgment should be reconsidered and denied, so that the City's rights are restored.

DATED: April 1, 2025         EVERETT DOREY LLP

By: _____
Seymour B. Everett, III
Samantha E. Dorey
Christopher D. Lee
Attorneys for Defendant and Counter-Plaintiff, CITY OF COSTA MESA

# PROOF OF SERVICE

**Insight Psychology and Addiction Inc. v. City of Costa Mesa**
**Case No. 8:20-cv-00504-JVS-(JDEx)**

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Orange, State of . My business address is 2030 Main Street, Suite 1200, Irvine, CA 92614.

On April 1, 2025, I served true copies of the following document(s) described as

**DEFENDANT CITY OF COSTA MESA'S REPLY TO PLAINTIFFS' JOINT OPPOSITION TO MOTION FOR RECONSIDERATION OF PARTIAL SUMMARY JUDGMENT FOR PLAINTIFFS BASED ON RECENT (DECEMBER 2024) NEW NINTH CIRCUIT LAW**

I served the documents on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on April 1, 2025, at Irvine, California.

                                        /s/Nydia Shannon
                                        Nydia Shannon

**SERVICE LIST**
**Insight Psychology and Addiction Inc. v. City of Costa Mesa**
**Case No. 8:20-cv-00504-JVS-(JDEx)**

| | |
|---|---|
| Mary Helen Beatificato, Esq.<br>INSIGHT PSYCHOLOGY AND ADDICTION, INC.<br>4000 Birch Street, Suite 112<br>Newport Beach, California 92660<br>Phone: (949) 216-3851<br>Email: mh@nsightrecovery.com | *Attorney for Plaintiff*<br>INSIGHT PSYCHOLOGY AND ADDICTION, INC. |
| Alisha Patterson<br>RUTAN & TUCKER, LLP<br>18575 Jamboree Road, 9th Floor<br>Irvine, CA 92612<br>Telephone: 714-641-5100<br>apatterson@rutan.com | |
| Autumn M. Elliott, Esq. (SBN 230043)<br>Law Office of Autumn Elliott<br>Autumn@elliottimpact.com<br>325 N. Larchmont Blvd., Suite 307<br>Los Angeles, CA 90004<br>(213) 500-9454 | *Attorneys for Plaintiff*<br>JANE DOE |
| Andrea Rodriguez (SBN 290169)<br>Disability Rights California<br>530 B. Street, Suite 400<br>San Diego, CA 92101<br>Telephone: (619) 814-8503-8000<br>Andrea.Rodriguez@disabilityrightsca.org | |
| Zeenat Hassan (SBN 294138)<br>Disability Rights California<br>350 S Bixel Street, Suite 290<br>Los Angeles, CA 90017<br>Telephone: (213) 213-8000<br>Zeenat.Hassan@disabilityrightsca.org | |
| Christopher Brancart<br>BRANCART & BRANCART<br>P.O. Box 686<br>Pescadero, CA 94060<br>Phone: (650) 879-0141<br>Email: cbrancart@brancrart.com<br>mdahl@brancart.com | |