O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INSIGHT PSYCHOLOGY AND ADDICTION, INC., and JANE DOE,<br><br>            Plaintiffs,<br><br>     v.<br><br>CITY OF COSTA MESA, et al.,<br><br>            Defendants. | Case No.: 8:20-cv-00504-MEMF-JDE<br><br>**ORDER GRANTING IN PART CITY OF COSTA MESA'S MOTION FOR RECONSIDERATION [ECF NO. 233]** |
| CITY OF COSTA MESA,<br><br>            Counter-Plaintiff,<br><br>     v.<br><br>INSIGHT PSYCHOLOGY AND ADDICTION, INC., et al.,<br><br>            Counter-Defendants. | |

///

///

1

Before the Court is the Motion for Reconsideration filed by Defendant and Counter-Plaintiff City of Costa Mesa (the "City," "Costa Mesa," or "Defendant"). ECF No. 233 ("Motion" or "Mot."). For the reasons stated herein, the Court hereby GRANTS the Motion for Reconsideration IN PART. The Court will issue an Amended Order Granting in Part Plaintiff Insight Psychology and Addiction, Inc. ("Insight") and Plaintiff Jane Doe's (collectively, the "Plaintiffs") Motion for Partial Summary Judgment in accordance with this Order.

I. **Background**

The Court has already summarized the relevant factual background in its Order Granting in Part Costa Mesa's Motion for Summary Judgment and Granting in Part Plaintiffs' Motion for Partial Summary Judgment. ECF No. 194 ("SJ Order"). The Court will only discuss the factual and procedural background relevant to this Order.

Insight provides supportive housing in Costa Mesa for adults with mental health and cognitive disabilities. Insight rents a six-unit multifamily apartment building located at 2461 Santa Ana Avenue (the "Property"), which Insight intends to continue to use for supportive housing. The Property is located in a R2-MD district (Multiple-Family Residential, Medium Density), a multifamily zoning district.

Starting in November 2014, the City created new zoning laws for "group homes." Effective on December 17, 2015, Ordinance No. 15-11 created group home regulations for Costa Mesa's multifamily residential zoning districts, including the R2-MD zoning district. Ordinance No. 15-11 required large group homes (7 or more occupants) in multifamily districts to obtain a conditional use permit ("CUP") and prohibited a group home from being located within 650 feet of any other group home, sober living home, or state-licensed drug and alcohol treatment facility, as measured from the property line. One of the stated purposes of Ordinance 15-11 was to address the perceived "overconcentration" of group homes.

In August 2016, the City cited Insight for a number of alleged violations of its zoning ordinances and informed Insight that it would need to apply for a CUP to continue operating. On October 26, 2016, Insight submitted applications for a CUP and operator's permit. In March 2018, the City discovered a separation conflict ("Separation Conflict") for Insight's housing, which was

located within 650 feet of certain state-licensed drug and alcohol treatment facilities in unincorporated Orange County. On July 2, 2018, the City informed Insight of the Separation Conflict and that it would recommend denying its CUP unless Insight obtained approval of a "reasonable accommodation." On August 3, 2018, Insight submitted an application for a reasonable accommodation asking the City to either: (1) waive the 650-feet separation requirement for Insight's housing; or (2) determine that Insight's housing is not within the purview of the City's group home regulations. On April 5, 2019, the City denied Insight's reasonable accommodation request.

Insight exhausted all administrative remedies and appeals before bringing suit against the City. In its SJ Order, the Court found that Insight was entitled to partial summary judgment on its reasonable accommodation claims. SJ Order at 41. Relevant to the current Motion for Reconsideration, the Court held that the City failed to present evidence showing that Insight's "requested accommodation was not necessary, not reasonable, or would cause undue hardship." *Id.* at 43. As part of its analysis, the Court relied on *Giebeler v. M & B Assocs.*, 343 F.3d 1143, 1147 (9th Cir. 2003), which outlines the burden-shifting framework for a plaintiff bringing a disability discrimination claim based on a failure to provide reasonable accommodations. *Id.* at 42.

On January 16, 2025, Costa Mesa filed the instant Motion for Reconsideration. Mot. The Motion is fully briefed. *See* ECF Nos. 245 ("Opposition" or "Opp'n"), 246 ("Reply").

II.     **Applicable Law**

A district court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order" for sufficient cause. *City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (emphasis omitted).

A motion for reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources," *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (discussing the standard of a motion for reconsideration under Fed. R. Civ. P. 59(e)). Additionally, the Ninth Circuit has established that "a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir.), *cert. denied*, 508 U.S. 951 (1993)). A motion for reconsideration may not be used to reargue a motion or present evidence that should have

3

been presented prior to the entry of judgment. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009). Reconsideration is appropriate if the movant demonstrates clear error, manifest injustice, newly discovered evidence, or an intervening change in controlling law. *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

Moreover, pursuant to Local Rule 7-18 of this District, a motion for reconsideration may be made only on the grounds of:

> (a) a material difference in fact or law from that presented to the Court that, in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered, or (b) the emergence of new material facts or a change of law occurring after the Order was entered, or (c) a manifest showing of a failure to consider material facts presented to the Court before the Order was entered. No motion for reconsideration may in any manner repeat any oral or written argument made in support of, or in opposition to, the original motion.

C.D. Cal. L.R. 7-18. "Absent good cause shown, any motion for reconsideration must be filed no later than 14 days after entry of the Order that is the subject of the motion or application." *Id.*

### III.  Discussion

Costa Mesa seeks reconsideration on several grounds. First, the City argues the Ninth Circuit's recent decision in *Ohio House, LLC v. City of Costa Mesa*, 122 F.4th 1097 (9th Cir. 2024), *amended and superseded by* 135 F.4th 645 (9th Cir. 2025) ("*Ohio House*") constitutes a "change of law" that mandates a different outcome regarding this Court's prior ruling granting partial summary judgment on Insight's reasonable accommodation claims. Mot. at 6; SJ Order 41–44. Second, and in the alternative, the City argues the Court failed "to consider material facts" that were properly before it prior to denying the City's Motion for Summary Judgment on Insight's disparate treatment claims. Mot. at 15; SJ Order at 21–27. Third, the City argues certain statements in the Court's SJ Order are in conflict with the Ninth Circuit's recent opinion in *Ohio House*. Mot. at 18.

As explained below, the City's first stated ground for reconsideration prevails while the second and third grounds fail. First, the City has demonstrated *Ohio House* is a "change of law" warranting reconsideration. C.D. Cal. L.R. 7-18. Second, the City cannot show the Court failed "to consider material facts . . . before the [SJ] Order was entered." *Id.* Third, "conflicting statements" between the Court's SJ Order and the Ninth Circuit's recent opinion in *Ohio House* is not a potential

4

ground for relief in the Ninth Circuit or in Local Rule 7-18 of this District. *See id.* As such, the Court GRANTS the Motion as to the first ground but DENIES the Motion as to the second and third grounds.

### A. *Ohio House* is an Intervening Change in Controlling Law.

Costa Mesa objects to the prior SJ Order because the Court declined to address the City's fundamental alteration argument on the basis that there was no binding precedent requiring it to do so. Mot. at 6. The Court instead framed the issue in the Ninth Circuit as "whether the accommodation is reasonable, or alternatively, whether it would work an undue hardship on the defendant." SJ Order at 34. Costa Mesa now contends *Ohio House* establishes the fundamental alteration defense in the Ninth Circuit and is thus binding on this Court. Mot. at 6. The Court concludes *Ohio House* is an intervening change in controlling law and presents a valid basis for reconsideration. *See Sch. Dist. No. 1J*, 5 F.3d at 1263; C.D. Cal. L.R. 7–18.

First, *Ohio House* settled the question of whether a court tasked with determining the "reasonableness of an accommodation" may consider the extent to which an "'accommodation would undermine the legitimate purposes and effects of existing zoning regulations.'" *Ohio House*, 135 F.4th at 678 (citation omitted). *Ohio House* involved a similar, albeit facial, challenge to Costa Mesa's zoning laws brought by The Ohio House, LLC, an operator of a sober-living home located in the City (the "Wilson Property") for men recovering from addiction. *Id.* at 656, 659, 673. The Wilson Property is located in a Multi-Family Residential, Medium Density zone that is designated "Commercial Residential." *Id.* at 659. After Costa Mesa implemented new regulations governing the ability of group homes to operate in residential zones, the City notified Ohio House that the Wilson Property did not satisfy the 650-feet separation requirement per Ordinance 15-11. *Id.* Ohio House then sued the City to enjoin enforcement of the zoning requirements after the City denied Ohio House a variance from the 650-feet separation requirement, which Ohio House had requested as an accommodation. *Id.* at 656, 659–660. The complaint sought relief under the Fair Housing Act (FHA) (42 U.S.C. § 3601 *et seq.*), California's Fair Employment and Housing Act (FEHA), and the California Planning and Zoning Law (Cal. Gov. Code § 65008). *Id.* at 659–660. The district court denied summary judgment on Ohio House's facial challenge, and a jury returned a verdict in favor

of the City on the reasonable accommodation claim. *Id.* at 673. The Ninth Circuit affirmed the district court's summary judgment and post-verdict rulings and found there was an evidentiary basis upon which the jury could find that "Ohio House's requested accommodation was unreasonable because it would cause a 'fundamental alteration' of the City's zoning scheme." *Id.* at 656, 679.

Central to the Ninth Circuit's ruling was its analysis of "determin[ing] the reasonableness of an accommodation or the need for a particular rule in a zoning scheme."[1] *Id.* at 678. The court adopted helpful guidance from the Eleventh Circuit's decision in *Schwartz v. City of Treasure Island*, 544 F.3d 1201 (11th Cir. 2008):

> Whether a particular rule is "essential" to a zoning scheme will, of course, turn on the facts of each case, but a few general principles guide us. The basic purpose of zoning is to bring complementary land uses together, while separating incompatible ones. *See Vill. of Euclid v. Ambler Realty Co.*, 272 U.S. 365 [, 388, 47 S.Ct. 114, 71 L.Ed. 303] (1926) ("A nuisance may be merely a right thing in the wrong place, like a pig in the parlor instead of the barnyard."). Thus, ordering a municipality to waive a zoning rule ordinarily would cause a "fundamental alteration" of its zoning scheme if the proposed use was incompatible with surrounding land uses. *See Bryant Woods Inn, Inc. v. Howard Cnty.*, 124 F.3d 597, 604 (4th Cir. 1997) ("In determining whether the reasonableness requirement has been met, a court may consider ... the extent to which the accommodation would undermine the legitimate purposes and effects of existing zoning regulations ...."). On the other hand, if the proposed use is quite similar to surrounding uses expressly permitted by the zoning code, it will be more difficult to show that a waiver of the rule would cause a "fundamental alteration" of the zoning scheme. Similarly, if the municipality routinely waives the rule upon request, it will be harder to show that the rule is "essential."

*Ohio House*, 135 F.4th at 678 (citing *Schwartz*, 544 F.3d at 1221). Applying these general principles, the Ninth Circuit found enough evidence in the record to show that the City enacted its group home regulations "out of concern about 'overconcentration of sober living units in any area' and to ensure that 'disabled persons recovering from addiction can reside in a comfortable residential environment versus in an institutional setting.'" *Id.* at 678–79. The court held, "The jury could have reasonably

---

[1] The Ninth Circuit determined Ohio House forfeited reliance on the FEHA on appeal and proceeded to analyze the reasonable accommodation claim under the FHA only. *Id.* at *17.

concluded that the separation requirement from which Ohio House sought an exception is fundamental to achieving these goals." *Id.* at 679.

Second, the Ninth Circuit in *Ohio House* considered similar evidence that the City presented in this case. In addressing Ohio House's challenge to the jury's verdict, the Ninth Circuit identified evidence in the record demonstrating Costa Mesa's legitimate reasons for enacting zoning laws governing group homes and sober-living homes. *Id.* at 670–71. There, the City argued "that an 'overconcentration' of group-living arrangements produced 'deleterious' effects 'to the residential character' of its communities and 'generated secondary impacts,'" such as "'neighborhood parking shortfalls, overcrowding, inordinate amounts of second-hand smoke, and noise.'" *Id.* at 671. The City emphasized that the "'the clustering of sober living facilities in close proximity to each other create[d] near neighborhoods of sober living homes.'" *Id.* The court also examined testimony from the City's Economic and Development Services Director Jennifer Le, who "echoed that 'the City was concerned about changes in residential character of neighborhoods as homes transitioned to a use that was more commercial or institutional as opposed to residential.'" *Id.* Le "further explained that '[g]enerally when you have a cluster of group homes or when you have higher-than-average persons per household . . . you can have increased traffic, increased parking[,] . . . [and] increased complaints due to noise, those types of things.'" *Id.* The Ninth Circuit concluded that such evidence provided a basis upon which the jury could find that "Ohio House's requested accommodation was unreasonable." *Id.* at 679.

Here, the City presented similar material facts. The Court granted the City's Request for Judicial Notice of the same ordinances and municipal codes on which the Ninth Circuit relied in *Ohio House*, including the Costa Mesa Municipal Code ("CMMC") §§ 13-6 (Definitions), 13-30 (Land Use Matrix), 13-200.60 (Purpose), 13-200.61 (Applicability), 13-200.62 (Reasonable Accommodations—Procedure), 13-200.63 (Severability), 13-310 and 13-320, 13-311 through 13-313, 13-321 through 13-324, 9-370 through 9-378, 13-202, 13-204, and Ordinances 14-13, 15-11, and 17-05. Mot. at 7–8; *see* ECF No. 141. The City also submitted a declaration from Le, who similarly testified that among the "legitimate, nondiscriminatory reasons" the City enacted the ordinances governing group homes "are 'to preserve the residential character' of the residential

zones, 'to free the handicapped [] from institutional style living,' to reduce 'overcrowding, inordinate amounts of second-hand smoke,' 'noise and traffic,' and to promote safety and well-being of both the clients of group homes as well as the community." ECF No. 140-1, Declaration of Jennifer Le ("Le Decl.") ¶ 12; *see* Mot. at 9. The City asserts on reconsideration that "[i]f such evidence was sufficient to support judgment for the City [in *Ohio House*], it necessarily was more than enough evidence to at least create a question of fact to survive summary judgment" in this case. Mot. at 6.

Plaintiffs argue in opposition that the Court should deny Costa Mesa's Motion because *Ohio House* is not a material change in fundamental alteration law. Opp'n at 2. Plaintiffs point out that the Ninth Circuit previously articulated the standard for establishing a fundamental alteration defense more than two decades ago in *Giebeler*, which this Court relied on in its SJ Order and which the Ninth Circuit relied on in *Ohio House*. Opp'n at 2–3 (citing SJ Order at 10–18; *Ohio House*, 135 F.4th at 678). The Ninth Circuit stated in *Giebeler* that "an accommodation is reasonable . . . 'when it imposes no "fundamental alteration in the nature of the program" or "undue financial or administrative burdens."'" *Giebeler*, 343 F.3d at 1157 (citation omitted). Plaintiffs' argument, however, is unpersuasive for two reasons. First, *Giebeler* involved a different set of facts than *Ohio House*. There, the Ninth Circuit did not analyze a municipality's fundamental alteration defense in determining the reasonableness of an accommodation. *See Giebeler*, 343 F.3d at 1157–1159; *see also* Reply at 5–6. Second, Plaintiffs overlook the distinction that prior to *Ohio House* there was no Ninth Circuit case instructing lower courts to measure the extent to which an accommodation undermines the legitimate purposes of a municipality's existing zoning regulations, especially when considering whether the reasonableness requirement has been met. This is the "gap" the Court identified in the SJ Order that resulted in the improper grant of partial summary judgment in Plaintiffs' favor and that has since been "filled in" by *Ohio House*. *See* SJ Order at 34, 41–44.

Plaintiffs also challenge Costa Mesa's Motion on the bases that *Ohio House* requires an individualized factual analysis for reasonable accommodation claims—which this Court's SJ Order satisfies—and that *Ohio House* favorably cites to other circuit decisions that reinforce the Court's reasonable accommodation ruling. Opp'n at 4. Specifically, Plaintiffs argue that the Eleventh

1  Circuit's decision in *Schwartz* and the Sixth Circuit's decision in *Anderson v. City of Blue Ash*
2  "confirm this Court's reasonable accommodation ruling was correct." Opp'n at 5–9; *see Schwarz*,
3  544 F.3d 1201 (11th Cir. 2008); *Anderson v. City of Blue Ash*, 798 F.3d 338 (6th Cir. 2015). In its
4  Reply, the City argues that "Plaintiffs . . . miss the point," since "summary judgment is improper
5  when there are factual questions" in dispute. Reply at 6–7. The Court agrees with the City. While
6  Plaintiffs are correct that *Ohio House* re-affirms the "'highly fact-specific . . . case-by-case
7  determination'" of reasonable accommodation claims, Plaintiffs fail to recognize that *Ohio House*
8  created a significant shift in the Court's prior analysis, such that the Court is now required to
9  determine the extent to which Insight's accommodation request undermines Costa Mesa's legitimate
10 reasons for enacting the group home regulations. *See Ohio House*, 135 F.4th at 677–678. This
11 analysis is key for "determin[ing] the reasonableness" of Insight's accommodation request. *See id.*
12 For these reasons, the Court finds that Plaintiffs' remaining challenges to the City's Motion also fail.

The unequivocal holding in *Ohio House* requires this Court to side with Costa Mesa and reverse the Court's prior ruling granting partial summary judgment on Insight's reasonable accommodation claims. *See* SJ Order 41–44. The City's Motion for Summary Judgment stressed that the 650-feet separation requirement is "fundamental" to accomplishing the purpose of the group home regulations. ECF No. 140 at 37. Because the Ninth Circuit accepted a similar argument from the City in *Ohio House*, it logically follows the City's argument and supporting evidence here is sufficient to create a genuine dispute of material fact to survive summary judgment. Accordingly, the Court GRANTS the Motion on this ground.

**B. The Court Did Not Fail "to Consider Material Facts" Prior to Denying Costa Mesa's Motion for Summary Judgment on Insight's Disparate Treatment Claims.**

Next, and in the alternative, Costa Mesa argues that the Court failed to consider certain material facts pertaining to its regulations of group homes in the R2-MD zone before denying the City's Motion for Summary Judgment on Insight's disparate treatment claims. Mot. at 15; *see* SJ Order 21–27. In the SJ Order, the Court found that the City failed to show an absence of a triable issue as to whether "its regulations are beneficial to individuals with disabilities." SJ Order at 27. Costa Mesa also contends on reconsideration that the Court disregarded evidence of the City's

9

1  legitimate purposes for enacting the group home regulations. Mot at 16. Given that this was raised in
2  the alternative, the Court need not reach this argument. Nevertheless, for the completeness of the
3  record, the Court will explain how it did not fail to consider any material facts.

4  The City's argument is unavailing because the Court *did* consider "the full context of [the
5  City's] zoning code" at the summary judgment stage. SJ Order at 26 & nn.11–12. Among the
6  reasons the Court provided for denying Costa Mesa's Motion for Summary Judgment was the City's
7  failure "to point to portions of the zoning code that apply to group homes in the multifamily
8  districts" and, more importantly, "that support its position that its own ordinances are beneficial." *Id.*
9  at 26. The City instead pointed "to regulations of boarding houses in R1 zones" when "Insight's
10 project is in the R2 (multifamily) zone." *Id.* As the Court made clear, "Arguments 'not supported by
11 citations to the record or to case authority are generally deemed waived.'" *Id.* at 27 (citing *United*
12 *States v. Graf*, 610 F.3d 1148, 1166 (9th Cir. 2010)); *see Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d
13 1026, 1029 (9th Cir. 2001) (holding district courts are only required to consider evidence cited in the
14 moving and opposing papers and need not "'comb the record'" looking for other evidence).

15 The City insists on reconsideration that the Court mischaracterized the evidence presented at
16 summary judgment and that the City "attached as evidence and specifically referred to the 'Group
17 Home Regulations,' which include those regulations that are specifically applicable to the R2
18 multifamily zone." Mot. at 15. However, the Court directs the City to review the plain language of
19 its Motion for Summary Judgment for confirmation that the City generally referred to the "Group
20 Home Regulations" without specifically citing to any of the relevant provisions in support of its
21 arguments. *See* ECF No. 140 at 19–32. Moreover, the Court rejects as improper any attempt from the
22 City to reference specific evidence on reconsideration that should have been cited to prior to the
23 entry of summary judgment. *See Marlyn Nutraceuticals, Inc*, 571 F.3d at 880. As such, the City fails
24 to identify any material facts that the Court did not consider at summary judgment. The Court
25 therefore DENIES the Motion on this alternative ground.

27 / / /

### C. The Court Need Not Address the Assertions Made Regarding "Conflicting Statements."

Finally, Costa Mesa asserts that certain statements in the Court's prior SJ Order conflict with the Ninth Circuit's recent opinion in *Ohio House*. Mot. at 18. Because Costa Mesa makes clear, however, that this is not a basis for granting of the Motion, the Court need not address it. *See* Mot. at 18 ("Although not directly at issue for reconsideration of the grant of partial summary judgment, additional statements in this Court's Order conflict with new Ninth Circuit law"); Reply at 10 ("Plaintiffs misconstrue the City's Motion Section VIII [highlighting conflicting statements] as somehow a basis for reconsideration. The City did not argue that. In fact, the City expressly prefaced [the Section on conflicting statements] that it was not at issue for the reconsideration requested.").

## IV.  Conclusion

For the foregoing reasons, the Court GRANTS the City's Motion IN PART. The Court will promptly issue an Amended SJ Order Granting in Part Plaintiffs' Motion for Partial Summary Judgment in accordance with this Order. The scheduled trial in this matter will therefore include Insight's reasonable accommodation claims, and the parties' pretrial filings shall reflect that.

IT IS SO ORDERED.

Dated: August 11, 2025

MAAME EWUSI-MENSAH FRIMPONG
United States District Judge